### ECKENRODE v. PENNSYLVANIA R. CO.
#### Civ. A. No. 5533.

District Court, E. D. Pennsylvania.
Jan. 7, 1947.

B. Nathaniel Richter, of Philadelphia, Pa., for plaintiff.

Owen B. Rhoads, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages for the death of the plaintiff's husband. The complaint also stated a cause of action under the Boiler Inspection Acts, 45 U.S.C.A. § 22 et seq., but upon that issue the jury, answering interrogatories, found in favor of the defendant. The jury found further that Eckenrode's death was caused by the negligence of an employee of the defendant and that it was contributed to by negligence on the part of Eckenrode, and diminished the damages by 50 per cent as a result of the latter finding. The defendant has moved for judgment upon its request for a directed verdict.

The facts, stated most favorably to plaintiff's case, and drawing all reasonably possible inferences going to support the verdict, are as follows:

Eckenrode was a brakeman 62 years old and had been employed by the railroad for 42 years. The accident occurred about noon on October 8, 1943, a clear, dry day. At the point of the accident the main track was on an up-grade toward the north. A short distance to the south, a siding, known as the Hastings Fuel siding, diverged from the main track to the right, also in a northerly direction but on a down-grade, so that between the arms of the Y formed by the two tracks there was a small embankment, with the main track above and the siding below.

The defendant's train consisting of 22 loaded coal cars was moving up-grade on the main track in order to couple the head car to some other cars which were standing at the top of the grade. The engine was at the rear of the train, headed for-

ward and pushing. Eckenrode, in the performance of his duties, made a coupling, threw the switch at the Hastings Fuel siding so that the train could proceed up the main track and returned to the caboose behind the engine, after which the whistle was blown, the bell rung and the movement began.

After passing the switch, the engine had about 200 feet to go in order to complete the movement. The train was a heavy one and, in spite of the fact that the track sanding equipment was operating properly, the grade was such that from time to time the driving wheels of the locomotive would slip and the train momentarily lose headway.

The locomotive was being driven by Sunderlin, the fireman, who was also a qualified engineer. He was sitting in the cab on the right side. Shortly after the movement began, the engine being then at a point about 50 feet past the switch and moving very slowly—less than two miles an hour—he looked out the side window and saw Eckenrode on the siding opposite the cab, walking along in the direction in which the train was moving and 10 or 12 feet away and 3 or 4 feet below. Eckenrode made a joking remark about getting a crowbar to help push the train up the hill and Sunderlin answered in kind. After that, he did not see Eckenrode again until he looked out of the window about three car lengths farther on and saw his body lying on the embankment to the right of the track about 5 feet from the front part of the engine, head toward the engine and feet down the embankment.

The plaintiff's theory of the manner in which Eckenrode met his death was that in attempting to put extra sand on the track in front of the driving wheels his head had been struck by a part known as the lap and lead lever—a bar which moves forward and backward on the outside of the front drivers, very slowly when the wheels are doing their duty but very rapidly when they slip and revolve at high speed. There was evidence to support this theory in that another brakeman saw Eckenrode, after he had walked about a hundred feet along the siding, pick something up from the ground and start diagonally up the embankment toward the main track, holding his two closed hands out in front of him.

Marks on the lap and lead lever and the cylinder head show that in some manner Eckenrode's head was between the two when it was struck. How it came to be there does not appear. Looking at the photograph of the parts of the engine involved, one would scarcely wish to hazard a guess as to what occurred. Eckenrode may have merely misjudged his distance, when he attempted to spread his handful of sand on the track, or he may have deliberately leaned over to examine the sand pipe where it came down to the track, taking the chance that he could draw back before the wheels slipped again. Or, having placed his head in dangerous proximity to the moving lever or walking along dangerously close to it, he may have slipped or stumbled. The possibility (if there was any such possibility) that the accident happened entirely without negligence on his part is eliminated by the jury's finding that his negligence contributed to the accident.

■ In answer to the interrogatory submitted by the Court, the jury found that Sunderlin was negligent "in not seeing Eckenrode after their conversation" and, on this basis alone,[1] found a verdict for the plaintiff.

■ The basis of liability under the Federal Employers' Liability Act is negligence and, in spite of the observation of the Court in Griswold v. Gardner, 7 Cir., 155 F.2d 333, 334, that "it is difficult to conceive of a case brought under this Act where a trial court would be justified in directing a verdict", it is still the duty of the Court to determine whether the plaintiff has produced any evidence of negligence on the part of the defendant and, if not, to direct a verdict. See Brady v. Southern

---

[1] The plaintiff's suggestion that each momentary pause of the train when the wheels slipped terminated a movement and that a bell should have been rung and a whistle blown, each time they took hold again, is without merit. There was only one continuous train movement and proper warning was given at its inception.

Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

The definition of negligence under the Employers' Liability Act as stated by the Supreme Court differs in nowise from its definition under the general law, except possibly for added emphasis upon the accepted corollary that the standard of care must be commensurate with the dangers of the business. In Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 67, 63 S. Ct. 444, 451, 87 L.Ed. 610, 143 A.L.R. 967, the Court said, " * * * the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done."

The Tiller case made it plain that under the Statute every phase of the doctrine of assumption of risk is completely eliminated, and it must not enter into the Court's consideration either as a defense or, upon the issue of negligence, as an element in determining the measure of the employer's duty of care to the injured employee. The practical effect of the Tiller decision upon the present case is that, for the purpose of determining what duty of care Sunderlin owed to Eckenrode, the latter must be treated as though he were a non-employee in a position in which he had a right to be. However, while the fact that he was an employee in no way reduced the duty of care which the defendant owed him, neither did it increase it, and the Court need not ignore the fact that the deceased was not a child or an infirm or incompetent person but a man of mature years in full possession of all his faculties and entirely familiar with the danger involved in getting too close to a moving locomotive.

I do not think that an engineer, engaged in operating a slowly moving locomotive, in broad daylight, is bound to keep a man walking along beside the cab 10 to 15 feet away under continuous observation, or that his not doing so is negligence.

Sunderlin could see that Eckenrode, as he walked along the siding, was not in a situation which was even potentially dangerous and he knew that there was nothing in Eckenrode's duties which would require him to board the train or even to come close to it until after the waiting cars had been coupled and the movement ended. That coupling would be made by the other brakeman and Eckenrode, who had nothing to do with it, could properly have ridden in the caboose. The plaintiff's suggestion that Eckenrode's joking remark that he would get a crowbar and push the train up the hill should have indicated to Sunderlin that he intended to assist the train cannot be seriously considered.

The locomotive was laboring and the wheels slipped six or eight times from the time the train started until the accident happened. Each time they slipped it was necessary to close the throttle promptly and then open it up again to the fullest extent. This required the engineer to give somewhat more attention to his throttle than would be the case in an ordinary movement. Assuming a speed of two miles an hour, he could not have had his eyes off Eckenrode for much more than a minute.

On Sunderlin's side of the cab there were two windows, one a small one in front, rather high up, and the other the large side window. If he had looked out the latter he could have seen Eckenrode up to a point two or three feet to the right of the front of the engine but not closer, unless he had leaned far out. Whether he could have looked or did look out of the front window as he proceeded—a matter as to which there was a conflict of testimony—is of very little moment in view of the fact that the side window gave him a much better view [2] along the track and, concededly, he did not look out of the side window. The matter of the front window might have been important if the injury

---

[2] The photograph of the engine shows very clearly that, looking from the small front window, the foot walk along the side of the boiler would have cut off the engineer's view along the track at a considerably greater distance than from the side window.

had been to a brakeman on the track or on the cars but the question here is negligence with respect to a man walking along at a safe distance beside the engine, with no reason to be on the train or to come close to it. "Actionable negligence is negligence to the particular person who has been injured. * * * The decisions are substantially unanimous to the effect that it is not sufficient to show that the defendant owed to another person or class of persons a duty which, had it been performed, would have prevented the injury of which complaint is made by the plaintiff." American Jurisprudence, Negligence, Paragraph 18.

■ The plaintiff contends that if Sunderlin had kept a continuous watch upon Eckenrode he would have seen him pick up sand and approach the engine. Undoubtedly he would, but even so, it can hardly be argued that it would have been incumbent upon him to stop the train movement at that point, and it would have been absurd for him to have warned Eckenrode that the train was moving and that the wheels were slipping from time to time, or to have explained to him that it would be dangerous for him to get his head too close to the driving wheels. Negligence can never be established merely by showing that had the actor acted otherwise no accident would have happened. On such a theory it would be negligence to have started the train at all.

The question of causation, under the facts of this case, is rather closely tied in with that of the defendant's negligence and it has, at least partially, been covered by what has been said. If, with Eckenrode under observation from the cab window, and with the engineer exercising all reasonable care, the accident still would not have been avoided, the engineer's failure to look, negligent or otherwise, cannot have been its proximate cause. The jury, answering another interrogatory, found that there was something "which a reasonably careful man, in Sunderlin's position, could have done which would have avoided the accident" had he been watching Eckenrode, but I think that the evidence was insufficient to support that finding.

In Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32, 64 S.Ct. 409, 411, 88 L.Ed. 520, the Supreme Court considered the whole question of the sufficiency of evidence to establish causation. The Court started with the proposition that the "Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred." And went on to say, " 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' "

■ The structure of the locomotive as shown by the photograph makes it plain that Eckenrode must have been extremely close to the engine in order to get his head into the position where it was crushed. Assuming that Sunderlin had seen him approach the train with sand in his hands, he would not have seen him nearer the locomotive than two or three feet and it would be mere speculation to say that there was anything which Sunderlin could have done at that point, short of stopping the train, which would have prevented the accident. Where a necessary link in the chain of cause and effect is the actor's failure to take some subsequent action, wholly uncalled for under the circumstances and not required of a reasonably careful man, it cannot be said that the original act is the proximate cause of the accident.

The defendant's motion for judgment is granted.