### ECKENRODE v. PENNSYLVANIA R. CO.
### No. 9330.

Circuit Court of Appeals, Third Circuit.

Argued May 8, 1947.

Reargued Oct. 17, 1947.

Decided Dec. 18, 1947.

---

Former opinion, 164 F.2d 481, which affirmed 71 F.Supp. 764.

B. Nathaniel Richter, of Philadelphia, Pa., for appellant.

H. Francis DeLone, of Philadelphia, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

John Henry Eckenrode, a railroad man for more than forty years, was killed in an accident on October 8, 1943. His widow, as administratrix, sued the railroad company under the Federal Employers' Liability Act [1] for the damages resulting from his death. There was also a claim based on the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., which has disappeared in the jury's verdict against the plaintiff on this point. The jury, however, after finding the decedent was guilty of contributory negligence, returned a verdict for $10,000 against the railroad and made two special findings [2] which are consistent with this verdict. The Trial Judge subsequently set aside the verdict, basing his action on a carefully considered opinion [3] in which he reached the conclusion that there was no evidence on which the jury could find against the defendant. The plaintiff appeals.[4]

 We agree with the Trial Judge. We are fully conscious of the weight to be attached to the jury's finding, which weight becomes the greater, we believe, when it is backed up by specific findings upon interrogatories submitted by the Trial Judge which go to the very heart of the case. We recognize that the plaintiff is entitled to the most favorable interpretation of the facts in her favor and all the inferences which may reasonably be drawn from the facts established by the evidence as viewed

O'CONNELL, Circuit Judge, dissenting.

————◆————

[1] 35 Stat. 65 (1908), 53 Stat. 1404 (1939), 45 U.S.C.A. § 51.

[2] The jury gave affirmative answers to these interrogatories:

"Was Sunderlin negligent in not seeing Eckenrode after their conversation?

"Was there anything which a reasonably careful man in Sunderlin's position should have done which would have avoided the accident even if he had been watching Eckenrode to the best of his ability?"

[3] D.C., E.D.Pa.1947, 71 F.Supp. 764.

[4] The District Court was affirmed per curiam, 164 F.2d 481. Rehearing was granted July 10, 1947.

in the light most favorable to the plaintiff's case. But with all of that in mind, we still conclude that there is no evidence on which a recovery based upon negligence on the part of the defendant can be sustained.

Case law does not help us much here.[5] There is no dispute that the foundation of recovery under the Act is negligence on the part of the defendant.[6] There is no doubt of the duty of the defendant to exercise care toward employees in the operation of trains. The difficult part of the decision comes in applying non-disputed rules of law to the facts. We turn, therefore, to the facts concerning this accident.

The time is about noon on October 8, 1943. The scene is a portion of the tracks of the Pennsylvania Railroad in the coal country a few miles east of Cresson, Pennsylvania. An engine of the pusher type has pulled four loaded coal cars out on to the main track from a spur line known as Hastings Fuel. The four cars have been pushed up to where eighteen other loaded cars stand on the main track. Eckenrode, the decedent, effects the coupling and then goes back to the caboose, which is the right place for him to go, his duty for the present being completed with the coupling of the four cars to the train.

The next step in the operation is to push these twenty-two loaded cars up a grade to join with another engine and additional cars which are being assembled at a point called Red Top. At the front of our twenty-two car train stands McGowan, the brakeman. He gives the signals for stopping and starting. In the engine cab are Sunderlin, acting as engineer, and Ingoldsby, fireman. Sunderlin applies power. The train moves a little and then the wheels skid, revolve rapidly without producing the necessary traction. The engineer closes the throttle and tries again. This process is repeated a number of times, each attempt resulting in a short forward movement of the train. It is slow, of course. The speed is probably not more than a mile and one half an hour.

While this pushing, starting, and stopping business is going on, Eckenrode comes from the cabin and walks up past the cab of the engine. He suggests to the "big boy" at the throttle that if the latter cannot move the train he, Eckenrode, will get a bar and bar it up. This remark receives a derisive rejoinder from Sunderlin, who continues to open and close his throttle as before. Eckenrode continues forward [7] and is seen by all three of the train crew walking along the Hastings Fuel track. This will place him some twelve feet away from the side of the engine with the distance between him and the train increasing as Eckenrode continues to walk down the spur. It also places him below the level of the coal train since the spur is on a down-grade from the frog and the main line is on an up-grade from the frog. This is the last time that Sunderlin sees Eckenrode until after the accident.

McGowan, the front brakeman, at his post twenty-two cars ahead of the engine, however, sees Eckenrode walking down the Hastings Fuel spur and then diagonalizing up the bank toward the train. He observes Eckenrode, as he walks up the embankment, stoop down and evidently pick up something. Later McGowan discovers marks which look to him like finger marks where Eckenrode stooped. In a time less than it takes to relate the matter by the printed

---

[5] "An examination of the proven facts to determine whether they are sufficient to permit a verdict by the jury for the decedent's estate based upon reason is of no doctrinal importance. Every case varies. However, the soundness of the judgment entered in the state Supreme Court depends upon an appraisal of the evidence * * *". Brady v. Southern Railway Co., 1943, 320 U.S. 476, 480, 64 S.Ct. 232, 235, 88 L.Ed. 239.

[6] "In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." Tiller v. Atlantic Coast Line Railroad Co., 1943, 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610. Also see Brady v. Southern Railway Co., 1943, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

[7] If Eckenrode had been serious in his statement to get the bar he would have gone back to the caboose which was the place where such tools were kept.

page, there has been an accident. Somehow or other Eckenrode's head has been struck between the lap and lead lever and the cylinder head of the engine. These lap and lead levers shoot back and forth very rapidly when the wheels are skidding instead of revolving in normal fashion. Eckenrode is unconscious. He is given such aid as the men can give and removed on a stretcher, but dies a few minutes later.

■ The above story is the sum total of the facts relative to the inquiry here. The facts came from the train crew and the Trial Judge permitted them to be examined as hostile witnesses.[8]

■ Out of this we cannot see a scintilla of evidence on which negligence can be found. For a man to be charged with negligence in failing to take precautions there must be some danger toward which these precautions should be directed.[9] Now what was the danger here? From a position of safety in the caboose, back of the engine, comes Eckenrode. He has no du-

ties with regard to the movement of the train at this point. He walks past the cab and he and the engineer exchange talk. Then he starts off along the spur which will take him further away from the train every step. What is there to watch out for? Eckenrode knows the train crew's problem as well as any of the rest of these men. The evidence showed that he had not only been a railroad man for more than forty years, but he worked this very run and had done this very job for several years preceding the accident. We think that there was nothing in his conduct to give notice to the engineer of any possible danger involved in the situation. We see no reason why Sunderlin should have kept watch for Eckenrode, who knew as much about what had happened and what they were trying to make happen as the engineer, himself, did. But, further, even if Sunderlin had operated his throttle by touch and kept his eyes on Eckenrode all of the time, still the latter's conduct gave no indication of danger.[10] Going down Hastings Fuel

---

8 Neither we nor the appellee quarrel with that exercise of discretion. Such permission gives the plaintiff greater latitude in the examination of his witnesses and the plaintiff is not bound by their testimony. Boyle v. Pennsylvania R. Co., 1943, 346 Pa. 602, 31 A.2d 89; Burke v. Kennedy, 1926, 286 Pa. 344, 133 A. 508; see Note, Uncontradicted Testimony, 1947, 45 Mich.L.Rev. 1034. But a belief that that testimony is false will not support an affirmative finding that the reverse of that testimony is true. Cruzan v. New York C. & H. Riv. R. R., 1917, 227 Mass. 594, 116 N.E. 879; Boatman's Sav. Bank v. Overall, 1885, 16 Mo.App. 510; Wallace v. Berdell, 1884, 97 N.Y. 13. Plaintiff has the burden of establishing his case by direct or circumstantial evidence; that burden is not met by pointing to the fact that all the available witnesses are hostile and will not testify in a manner which would support the complaint.

9 Section 289 of the Restatement of Torts states:

"When the Actor Should Recognize the Existence of Risk.

"The actor should recognize that his conduct involves a risk of causing an invasion of another's interest, if a person,

"(a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior perception as the actor himself has, and

"(b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself has, and

"(c) correlating such perception and knowledge with reasonable intelligence and judgment

would infer that the act creates an appreciable chance of causing such invasion."

Comment b of that Section is very informative in this connection: "This Section states one, but only one, of the factors to be considered in determining whether a particular act is or is not negligent. In order that an act may be negligent it is necessary that the actor should realize that it involves a risk of causing harm to some interest of another, such as the interest in bodily security, which is protected against unintended invasion. But this of itself is not sufficient to make the act negligent. Not only must the act involve a risk which the actor realizes or should realize, but the risk which is realized or should be realized must be unreasonable, as to which see §§ 291 to 293."

10 At the rehearing plaintiff placed great reliance on a recent case in the Second Circuit. Mostyn v. Delaware, L. & W. R. Co., 1947, 160 F.2d 15. In that case plaintiff was injured while asleep on the track. It was clear that the engineer had a duty to observe what was in front of him because he was on a track, not ordinarily used, which the

spur was certainly not conduct against which Eckenrode should have been protected, nor was his climbing up the bank so as to get nearer his train. After all, he had to rejoin that train.

The point we are making does not involve assumption of risk. That is out of this law. Nor does it involve contributory negligence. The jury has found that Eckenrode was contributorily negligent. We are not at all sure that that finding could be sustained for it is just as speculative as is a negligence charge against the company. What we are talking goes to the very foundation of liability. It has to do with the duty of Sunderlin, in charge of the operation of the engine, to take precautions against an experienced fellow member of his train crew acting in a wholly unexpectable and unreasonable fashion. We see nothing on which any charge against the company based upon carelessness of the locomotive's crew could possibly be sustained.

The brakeman, McGowan, saw Eckenrode stoop and apparently pick up something. Assuming that what he picked up was sand and McGowan should have recognized it, that would still leave no basis for finding negligence. For even assuming that McGowan should have realized that Eckenrode picked up sand, there was no reason for charging him with negligence in his failing to anticipate that Eckenrode would come up close to the engine and do anything relative to the movement of the train with two handfuls of sand. We do not, in fact, know what Eckenrode was doing with the sand, assuming that he had any. Even if it may be inferred that he was trying to sand the tracks with it, it is too much to say that McGowan or other members of the train crew are to be charged with negligence in failing to anticipate this completely unexpectable operation on Eckenrode's part.

Any Federal Judge who sees these railroad accident cases come in and go out of the courts must be troubled by the unsatisfactory social results obtained. Some claimants go out with very large verdicts. Others go out with nothing. Yet in each case the injury has come as part of the business of train movement and the disastrous consequences upon the victim or his family are equally heavy. But so long as the law is that the defendant must be negligent for the plaintiff to recover for his injuries it is our responsibility to apply the negligence test honestly and not to pretend that there is negligence when it does not exist. It does not exist in this case.

The judgment of the District Court will be affirmed.

O'CONNELL, Circuit Judge (dissenting).

As I am not in accord with the conclusions reached by the majority, it might not be amiss to review in part the background of this case. After a trial lasting two days, defendant made a motion for a directed verdict. The trial court denied the motion. That the question of defendant's negligence was deemed a jury question is attested by the following excerpt from the charge of the court, to which defendant did not take exception: "When a man is operating an engine, the question is, do you think he is bound to keep his eye at all times on somebody who is walking alongside the engine at a distance of twelve feet, we will say, on a lower level? Is it want of care or prudence if he takes his eye off that person and does not look at him any more, but concentrates on the operation of the engine in pushing the cars up the siding? *He could have seen Eckenrode—there is no question about that—if he had leaned out of the cab* or put his head out of the side window of the cab and followed him with his eye. He could have seen him all the time. Is that a requirement of due care? Should an engineer do that? We all know that people walk alongside of tracks. *Are you bound to anticipate that something will happen to them which will throw them under the engine or that they will place themselves in*

---

workmen had to cross to enter or leave the place where they stayed. If he had looked, as he was required, he would have discovered the danger. In the case at bar, however, the engineer did look and discovered Eckenrode in a safe position, free from all harm. Thus he had no way to anticipate that any accident would occur.

*a position where they are going to be hit by the engine? That is a question for you. I am going to leave that entirely to you.* Is it carelessness for a man driving an engine not to keep his eye on a man walking beside his cab at the distance at which Eckenrode was walking?"[1] (Emphasis supplied.)

Eleven interrogatories were submitted to the jury. Answering those interrogatories, the jury, in defendant's favor, found that there had been no violation of the Safety Appliance Acts and that plaintiff had been guilty of contributory negligence; in plaintiff's favor, the jury also found that Sunderlin, the engineer, had been guilty of negligence, and returned a verdict for plaintiff. The court entered judgment on that verdict. It was only after defendant filed a motion nine days later to set aside the verdict, and hearing was held on that motion, that the court set aside the verdict and judgment and entered judgment in favor of defendant.

In view of what I deem the clear mandate of the Supreme Court, as expressed in Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Myers v. Reading, 1947, 331 U.S. 477, 67 S.Ct. 1334, and Lillie v. Thompson, 1947, 68 S.Ct. 140; I am hesitant to invade the fact-finding function of the jury, particularly where, as in the instant case, the jury displayed an ability to give consistent answers to interrogatories, which replies strongly indicate an impartial approach; and where the verdict is not challenged as to reasonableness of amount, if defendant was in fact negligent, and makes ample allowance for decedent's contributory negligence. Moreover, it seems illogical to me for the court to accept the jury conclusion as to one finding of fact (that the Safety Appliance Acts were not violated) but reject another (that defendant had been negligent).

The recital of facts in the majority opinion omits what seems to me a very relevant subject. Sunderlin, whose job on the crew was that of fireman but who was acting as engineer,[2] testified that, at the time of the accident, he was seated on the engineer's seat and looking through the small front window, through which he could see alongside the train but could not see along the side of the engine. To "see down the side" of the engine, he said, "you have to look out the side window"; and, had he looked out of the side window, he would have seen Eckenrode.[3]

On the other hand, Ingoldsby, the regular engineer who was acting as fireman when the injury occurred, testified that, in a seat-

---

[1] It should also be noted that plaintiff requested the following charge: "If under all the circumstances, you believe that the only way that the engineer could get a clear view would be by looking out of the side window, then his failure to do so would be negligence, and if by reason thereof the decedent suffered his fatal injury, then your verdict would be for the plaintiff." The trial court denied the request, with this remark: "I will leave it to the jury to say whether his failure to look out of the side window was or was not negligent."

[2] Sunderlin was a qualified engineer, so that no negligence may be imputed to defendant on that score. That his usual duty was other than engineer, however, might have weight in determining whether, under the circumstances, he behaved like a reasonably prudent engineer.

[3] Pertinent extracts from his testimony on this question are:

Mr. Richter [plaintiff's counsel]: "And were you looking ahead?"
Mr. Sunderlin: "Yes, sir."
Richter: "Out of the side window?"
Sunderlin: "No, sir."
* * * * * *
Richter: "By that you mean you would have seen him if you looked out the side window?"
Sunderlin: "Yes."
Richter: "There was nothing to block your view out that side window, was there?"
Sunderlin: "That is right."
Richter: "The window was open, was it not?"
Sunderlin: "Yes."
Subsequently, on cross-examination as to Sunderlin's position, the testimony was:
Mr. Rhoads [defendant's counsel]: "Could you see along the side of the engine?"
Sunderlin: "No, sir."
Rhoads: "Why not?"
Sunderlin: "Because you couldn't see down the side of the engine out that front window. You have to look out the side window."

ed position, he[4] would not be able to look out of the front window, and further that an engineer running an engine forward hangs out of the side window; that "if you can see out of the front, well, it is just as well," but that "it wouldn't be very nice standing up." Completely apart from any consideration whether Sunderlin was required to keep Eckenrode under *continuous*[5] observation, it seems to me that, on the basis of Ingoldsby's testimony, the jury had an adequate basis for finding Sunderlin negligent in failing to lean out of the side window, especially since he was seated and since his ability to see out of the front window was at best dubious. As an italicized portion of the court's charge quoted above and Sunderlin's testimony clearly indicate, had Sunderlin assumed what the jury must be deemed to have found to be the correct operating position under the circumstances, he would have seen Eckenrode; and, giving the jury verdict the presumption to which it is entitled, I think it must be assumed that the train could have been stopped in time. I am not prepared to say, as a matter of law, that evidence of negligence in performance of a duty to Eckenrode was not presented in the case *sub judice*.

Consequently, I believe that the testimony concerning the operating position of the engineer, especially when Sunderlin had reason to know that Eckenrode was not on the train and would have seen Eckenrode had he looked out of the side window, was evidentiary basis for the specific jury finding that Sunderlin was negligent; nor does the fact that a "speculative" element may have been involved in the jury finding warrant the drawing of a contrary inference by the court. See Lavender v. Kurn, supra, at page 653 of 327 U.S., 66 S.Ct. 740, 90 L.Ed. 916. On the basis of this testimony alone, I cannot say that there is a complete absence of probative facts to support the jury decision.

I differ from the majority reasoning that Eckenrode's status as a railroad man for forty years and his experience on this job he was performing at the time of the accident relieved Sunderlin of the necessity of keeping watch for him; for this, in my opinion, was a jury question which the jury resolved to the contrary. "Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries. * * * To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." Bailey v. Central Vermont Ry., 1943, 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444.

Because I believe the instant case to be indistinguishable in principle from Lavender v. Kurn, supra, Lillie v. Thompson, supra, and Mostyn v. Delaware L. & W. R. Co., 2 Cir., 1947, 160 F.2d 15, certiorari denied 68 S.Ct. 82, I am of the opinion that the judgment of the district court should be reversed.

---

[4] The exact testimony was:

Mr. Richter: "Sitting down can you look out of that front window?"

Mr. Ingoldsby: "No."

Whether the word "you" means "an engineer" or "Ingoldsby" cannot be determined from the record. For the purpose of this discussion, I treat "you" in its more restrictive connotation.

[5] I consider it immaterial whether Sunderlin had a duty to observe Eckenrode *continuously*. For the purposes of this case, plaintiff need only establish that Sunderlin failed to observe Eckenrode at a time when he had a duty to do so.