ATLANTIC COAST LINE RAILROAD
COMPANY,

v.

Beatrice A. ANDERSON, as Administra-
trix of the Estate of Charles Arthur
Anderson, Jr., deceased.

No. 15224.

United States Court of Appeals,
Fifth Circuit.

April 6, 1955.

Rehearing Denied May 11, 1955.

Howell & Howell, T. Malcolm Kirby, Jacksonville, Fla., for appellant.

T. J. Lewis, Jr., T. J. Lewis, Atlanta, Ga., Fred R. Wilson, Sanford, Fla., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

Brought in two counts, one under the Safety Appliance Act, 45 U.S.C.A. § 11, the other under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, the suit was for damages resulting from the death of plaintiff's decedent.

1. (1) Due to a defect in its car, track, or roadbed, the refrigerator car failed to roll clear of the crossover track in the first instance prior to the fastening of the chain and the subsequent movement.

(2) The engineer failed to move the engine when he saw the deceased would be caught between the car and chain.

(3) The engineer, although he saw the deceased in a place of danger, failed, at the time, to warn the deceased by horn, gong, whistle or other signal.

2. Charles Arthur Anderson was the conductor of train 532 being operated from Sanford, Florida, to Jacksonville, Florida, on Nov. 4, 1950, by the defendant.

The train was a freight train and the engineer had been given instructions by Mr. Anderson that a car of perishables was to be picked up in Crescent City, Florida on the way north. The engine was stopped on the main line in Crescent City about four car lengths from the "south crossover switch" leading to a "teamtrack" where car FGE 52709, the car in question, was parked. The engine and four cars were disconnected from the rest of the train, and Anderson gave instructions for the crew to take the engine and four cars into the "team track" by means of the crossover. The engine and four cars moved through the crossover in a northerly direction, the front of the engine was coupled to the refrigerator car, and Anderson then gave a signal to "jerk the car by". This movement is best described by the plaintiff's witness, Singletary, the brakeman, when he said that after the car is coupled and the engine starts backing up then "when a certain amount of speed was attained, the engine slowed down allowing slack to bunch. Then the car was cut loose from

The first count charged failure to provide sufficient hand brakes. The claim of the second count was in substance that while plaintiff, as the conductor of a train crew, was engaged in directing and conducting a switching operation, he was, as a result of the negligence [1] of defendant, its agents and servants, caught and crushed to death between the refrigerator car and the chain by which it was attached to the engine.

The defendant specifically denied the charges of each count, and, on the issues joined, the cause was tried to a jury. The evidence in,[2] plaintiff moved for an instructed verdict for the plaintiff on the engine and after the engine crossed the crossover switch, the switch was thrown allowing the car and engine to go down different tracks". After the car was cut loose in this instance it failed to clear the crossover and stopped in a position fouling it.

When it appeared that the car had not rolled into the clear Conductor Anderson and Brakeman Singletary got a 14 foot long chain off the engine for the purpose of having the car pulled into the clear to the point of the team track south of the crossover. Singletary attached one end of the chain to the engine and Anderson attached the other end to the refrigerator car. On signal from Anderson the engineer was instructed to move the engine backward, or southward, so as to pull the car clear of the crossover.

After several jerks on the chain the car commenced to roll and upon signal by Anderson the engine was stopped while the refrigerator car continued to roll. "Then the conductor, Mr. Anderson, walked in the head of the car, between the chain and the car to disconnect the chain from the car, which he failed to do" (Rec. 75). As the refrigerator car rolled south at three to four miles per hour Conductor Anderson was walking southward at the south end of the car with his back to the car, his face to the engine, with the chain in front of him. None of the members of the crew except Engineer Futch were in positions where they could see the events occurring after the car started moving. Anderson made one attempt to disconnect the chain from the car, and the Engineer hollered and "told him to get out, he was going to get caught."

After that Anderson made two more attempts to disconnect the chain and the car came up behind him and caught him.

count one,[3] while defendant moved for such a verdict in its favor on both counts.

These motions were denied, and there was a verdict on the first count in favor of defendant and on the second count in favor of plaintiff, and a judgment on the verdict for $30,000.

Assigning a single error, the denial of defendant's motion for a directed verdict, defendant is here insisting that there was no evidence showing or tending to show that there was negligence on the part of defendant, proximately causing Anderson's death, and that the evidence established as matter of law that his death resulted directly, proximately and solely from his own negligence and without fault on the part of the defendant.

Pointing out: that the jury decided, in favor of defendant, that there was no defect in the brake; and that there was a complete failure of the evidence to point to any defect in the car, track, or roadbed which caused, or had contributed to Anderson's death; appellant urges upon us that there is equally no basis for a finding that the engineer was negligent either in failing to move the engine when he saw that the deceased would be crushed or in failing to warn him by bell or whistle of his danger. A reading of the undisputed and unimpeached testimony[4] of Futch,

---

From the time Futch yelled at Anderson until he was caught between the car and the chain only a few seconds elapsed. Futch did not know whether Anderson heard him yell or not, but testified that Anderson "was right there" at a distance of about twenty-five feet from where Engineer Futch was sitting. After being caught as above described Conductor Anderson was conscious for a short time and died within 10 or 15 minutes.

3. "Mr. Lewis: We would like to move for a directed verdict for the plaintiff on Count One of the cause which alleges the violation of the Safety Appliance Act. We have shown, I believe, to the satisfaction of the Court, that the car failed to roll when it was jerked in the usual and ordinary, customary manner. The evidence is that it had speed enough to have gone into the clear if there had not been some defect or something wrong with the car; and *the evidence in the case is that the braking apparatus was the cause of the car failing to roll.*" (Emphasis supplied)

4. Q. "Now you make that movement down there a whole lot of times, don't you?"
A. "I have had a lot of occasions to do that. That is what the chain is put on there for."
Q. "And the way Mr. Anderson did that job that day was the way it was done all the time, wasn't it?"
A. "I have done it a hundred times or more myself."
Q. "I say the way he did it that day is the way it was customarily done, isn't that right?"
A. "Usually."
His evidence further shows that after the engineer had gotten the refrigerator car in motion by pulling it with the chain, the engine was stopped and deceased, walking in front of the moving car, which was rolling on the transfer track on an angle with the engine and moving up to it to pass it, undertook to disconnect the chain from it. In thus walking, the deceased was in the performance of his duties doing what was customary in such a movement. It was a dangerous thing to do but it was customary. He was walking in front of the car, his back to the car facing the engine when he gave the signal to back up and was about 40 or 45 feet from Futch.
Q. "And you obeyed that signal?"
A. "I certainly did."
Q. "And Anderson then was between the chain and the car, is that right?"
A. "Not at that time."
Q. "Where was he then?"
A. "He was walking along the side of the car and when he got the car rolling, the speed of the car he wanted, then we walked in ahead of the car."
Q. "Between the chain and the car?"
A. "Yes."
Q. "Now you make that movement down there a whole lot of times, don't you?"
A. "I have had a lot of occasions to do that. This is what the chain is put on there for."
Deceased made one attempt to release the chain, the engineer called to him to look out, after which he made two more attempts to release it before the chain caught him against the end of the car. A few seconds elapsed between the time the engineer called to him and the time he was caught. When questioned whether he could have moved the locomotive in

the only eyewitness, that in using the chain method of "jerking the car by," Anderson, under whose direction and control the work was being done, was doing the job in the usual and customary manner, in the same way, indeed, in which he and Futch had performed over a fifteen year period, convinces us that this is so.

On the claim that the engineer was negligent in not, of his own motion and contrary to the order and direction of the conductor to stop the engine, suddenly moving the engine and four heavily loaded cars so as to avoid injury to the deceased, we think it quite clear that plaintiff did not make out a case.

The undisputed and unimpeached evidence of the engineer, the only eyewitness, establishes that this could not have been done,[5] and it is settled law that, with the record standing thus, the jury may not disregard his testimony to turn to speculation. Pennsylvania Ry. Co. v. Chamberlain, 288 U.S. 333, at page 341, 53 S.Ct. 391, 77 L.Ed. 819. Cf. Arnall Mills v. Smallwood, 5 Cir., 68 F.2d 57, at page 59; and Kuykendall v. United States Gas Pipe Line, 5 Cir., 208 F.2d 921, 922.

Under the orders of the deceased the engine had been brought to a complete stop, the engineer had not been directed, there was no occasion for him, to keep his steam up, and he testified without contradiction that with the heavy cars behind him it was impossible for him, when he realized Anderson's peril, to make the move suggested.

In addition, deceased was walking in front of the moving car and between it and the engine, and it would have been an impossibility even if the engineer could have suddenly started the engine to have done so without extreme danger to the deceased who was walking in front of the car and between the car and the engine which were linked together by a chain not more than fifteen feet long.

Neither is there basis in the evidence for a finding that the engineer should have warned the conductor of his position of danger by blowing a whistle or ringing the bell. Assuming that such a signal, sounded only twenty feet from him would have been understood by the conductor as a warning to him and also would not have caused him to freeze in a position of peril, the circumstances of the case establish beyond question that there was no legal duty on the engineer to do this. Anderson was in charge of the whole operation, an operation which he had performed many times, and there was no reason for the engineer to suppose that Anderson was not fully aware of his situation. The engineer did shout when

time to save Anderson's life, he testified, "No."

Q. "You could have given it steam, though, couldn't you? You had the throttle there didn't you?"

A. "The man was done caught then."

5. "Now how many cars did you have on your locomotive at the time you were sitting there during this matter of seconds between the time you saw Mr. Anderson at the point of danger at the time he was caught, how many cars did you have on your locomotive?"

A. "I had four cars behind the engine."

Q. "Did you have time to move the train between that time?"

A. "No sir, not then."

Q. "Is there any motion you could have made to have pulled the train back in that lapse of time?"

A. "I didn't have time to do that; all I had time to do was to holler and tell

him to get out before he got hurt, that's all the time I had before he got hurt."

Q. "I say, you could have moved your locomotive, couldn't you?

A. "Not quick enough to save his life, then, no."

Q. "You could have given it steam, though, couldn't you, you had the throttle there, didn't you?"

A. "The man was done caught, then."

Q. "Steam locomotives when you pull on the throttle, pick up motion, don't they?"

A. "It depends on the valve opening, how much steam you have got."

Q. "This particular engine this day, was it pretty fast on the opening?"

A. "If it is a light engine, yes."

Q. "You don't think you could have gotten out of the way if you had started to move your engine any at all?"

A. "Not with four cars of pulpwood behind me, no."

he realized that Anderson was apparently not sufficiently alert to his danger, but Anderson either did not hear him or thought he still had time to pull the pin and let the car roll by.

We think it cannot be contended otherwise than that as matter of law the conductor was the active author of the chain of circumstances which caused his death. If, as seems to be established by the evidence, it was not negligent in him to conduct the operation in general as he was doing, we think it may not be doubted: that in taking a position in front of the car so that as the following car moved toward the engine it would draw the chain around him, and in placing and keeping himself in this position, from which no one but himself could extricate him, the deceased was solely responsible for his own death; and that certainly his own fault may not be imputed to defendant as negligence on its part.

■ It is still the law that in a case of this kind, proof of negligence on the part of defendant is essential. "The Federal Employers' Liability Act does not make the employer the insurer of the safety of his employees while they are on duty * * *. The basis of his liability is his negligence, not the fact that injuries occur." Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572.

Quoting from Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164, in which decisions of the Supreme Court, including Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Bailey v. Central Vt. Ry. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, and Tenant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, are gathered and commented on, and discussing those cases, appellee presses upon us his contention that the Supreme Court has in fact and in effect, though not in terms, held that in employers' liability cases the jury is the judge both of the law and the facts and urges that

upon their authority the jury's verdict must be upheld. In addition, he argues that, under the rule of Lavender v. Kurn and Ellis v. Union Pacific R. Co., supra, that only where there is a complete absence of probative facts to support the conclusion reached does reversible error in not instructing a verdict appear, there was ample evidence in this case to support the jury verdict.

■ While it must be admitted that, in the opinions appellee cites, the court has apparently gone a long way in limiting the traditional province of the judge and in enlarging that of the jury in the determination, on the one hand, of whether there is any evidence to take a case to the jury and, on the other, what the effect of the evidence is, the wheel has not yet come far enough over to completely abolish the function of the judge and make the jury in these cases sole judges of the law as well as the facts. It is still the law, that fact and law are separate provinces, fact for the jury and law for the court, and that whether, under the rule of right reason, the evidence as a whole is without probative force, is not a question of fact for the jury but of law for the court. Cf. Law and Fact in Insurance Cases, Texas Law Review, Vol. 23, No. 1, p. 17; Chamberlayne, "The Modern Law of Evidence", Secs. 120(a), 122, 145, 148 and 149.

■ Under these principles, appellee's insistence that the engineer was guilty of negligence, in not warning the deceased, will not, we think, do. Mr. Anderson was an experienced railroad conductor of many years service. He was the person in charge of the operation and all orders and signals came from him. Using a chain to jerk a car, as was being done at the time, was a usual and constant practice in railroading. With all of this knowledge, Anderson chose to approach the moving car from the west or right side to disconnect the chain. Just as anyone knows of obvious dangers, he, as an experienced operator, knew that in

the position he had assumed, the moving car with a fourteen foot chain would soon use up the slack and cause the chain to be pulled taut against him. He could have approached the front end of the car from the east and left side and been wholly out of harm's way, but he walked in between the car and the chain and at all times the car was moving toward him from behind and he was facing the chain. The situation constituted a clear trap of his own making which was open, obvious and known, and engineer Futch, sitting in his position in the locomotive, knew that Anderson was a man of experience and common sense. This was not the situation of a man new on the job who needed to be warned of the dangers attending on it. It was not a situation where facts were known to the engineer which were not known to Anderson. It was not a situation where Futch, not Anderson, was directing the operations. It took only a few steps for Anderson to place himself in a position of safety around the southwest corner of the car, but he continued his attempts to disconnect the chain and in that brief moment he was caught. How could Futch have known or believed that Anderson would not take himself out of harm's way? How could there be a legal duty to warn Anderson when the situation was perfectly obvious to Anderson and the fatality occurred in a few seconds? The law is well settled that there is no duty to warn of known or obvious dangers and no negligence, therefore, in failing to do so. 65 C.J.S., Negligence, § 89, Notice or Warning of Known or Obvious Dangers, page 599; 56 C.J.S., Master and Servant, § 296, page 1057; Foreman v. Texas & N. O. R. Co., 5 Cir., 205 F.2d 79.

■ We realize that in a Federal Employers' Liability case assumed risk is not a defense and that contributory negligence goes only to diminution of damages. This is not a case of contributory negligence or assumed risk but of sole negligence. In placing and keeping himself in a position of danger between the end of the box car and the chain attached to the front of the locomotive, Anderson was guilty of extreme negligence. While this would only diminish his damages if the defendant was also guilty of negligence, proof that it was is wholly lacking, and Anderson's negligence was, as matter of law, the sole proximate cause of the accident. Atlantic Coast Line R. Co. v. Coleman, 5 Cir., 182 F.2d 712, and cases cited and quoted from in note 4, page 716; Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 189 F.2d 525; and Stringfellow v. Atlantic Coast Line R. Co., 290 U.S. 322, 54 S.Ct. 175, 78 L.Ed. 339.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

On Petition for Rehearing.

PER CURIAM.

It is Ordered that the petition for rehearing in the above entitled and numbered cause be, and it is hereby Denied.

■ Movant having advised the court that appellee can offer no further evidence than she adduced on the trial and that a reversal, therefore, for another trial would be useless, the opinion is amended so that, instead of providing that the judgment be reversed and the cause remanded for further and not inconsistent proceedings, it and the mandate following it will provide, "The judgment is Reversed and Remanded with directions to enter final judgment for the defendant".