Finnegan, Appellant, *v.* Monongahela Connecting Railroad Company, Appellant.

64

Argued May 25, 1954. Before Stern, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*James P. McArdle*, with him *P. J. McArdle*, for plaintiff.

*Emmet D. Hurley, Jr.*, with him *T. W. Pomeroy, Jr.* and *Kirkpatrick, Pomeroy, Lockhart & Johnson*, for defendant.

Opinion by Mr. Justice Chidsey, October 8, 1954:
This action to recover damages for personal injuries under the Federal Employers' Liability Act, Act of April 22, 1908, c. 149, 35 Stat. 65, as amended, 45 U.S.C.A. §51, was instituted and tried in the Court of Common Pleas of Allegheny County. There are two appeals. No. 95 is the appeal of the Monongahela Connecting Railroad Company, defendant in the action, from the order of the court en banc refusing to enter

judgment non obstante veredicto. No. 130 is the appeal of Thomas E. Finnegan, plaintiff in the action, from the order of the court en banc awarding a new trial.

On April 30, 1949, plaintiff was a conductor in the employ of defendant assigned to a train crew engaged in shifting cars in the vicinity of the plant of the Jones & Laughlin Steel Corporation, in the City of Pittsburgh. The crew had been instructed by the yardmaster to pull certain cars from a track located inside the doors of one of the Jones & Laughlin mills. This portion of the track together with all of the immediate area was owned by Jones & Laughlin, although the entire spur track was constructed by defendant. The track inside the mill runs along a loading dock or shipping platform on which Jones & Laughlin employes pile steel for loading into the railroad cars. On the other side of the track is a blank wall which prevents passage on that side while cars are standing on the track. A yellow line had been painted on the floor of the shipping platform about three feet from the edge to indicate to Jones & Laughlin employes what space was to be left clear for the use of railroad employes.

Upon receiving the instructions from the yardmaster, plaintiff, who by virtue of his position as conductor was in charge of the shifting crew, took his train up to the closed door of the mill. He then entered the mill by another door and proceeded to the shipping office where he received from Jones & Laughlin employes the bills of lading for the outgoing cars. The overhead door was then opened by employes of Jones & Laughlin to admit the shifting engine. Plaintiff uncoupled the last car to be pulled out from those cars which were to remain in the mill, and one of the brakemen coupled to the engine the car nearest the overhead door of the mill. Plaintiff then gave the

starting signal which was relayed by the brakeman to the engineer, who started the engine in motion to pull the cars out of the mill. Plaintiff walked down the loading platform toward the overhead door, keeping abreast of the cars which were being pulled out at a rate of speed of about two miles an hour. As he proceeded toward the door he observed a pile of steel three to four feet high protruding beyond the yellow line to about three inches from the edge of the platform, thus obstructing his way. Plaintiff then gave a signal to stop the train. After the train had stopped plaintiff attempted to pass between the steel and the railroad car, a space of about 15 inches. The leg of his overalls caught on the edge of the steel and he fell from the platform to the track, a distance of about three and one-half feet, sustaining the injuries for which recovery is sought.

It is clear from the undisputed testimony that the steel was placed near the edge of the platform by Jones & Laughlin employes; that loaded cars were removed from the mill siding on an average of three times a day; and that the conductor of a shifting crew is responsible for the safety, prompt movement and proper care of his train, and for the conduct of the members of the crew.

After a trial lasting four days the jury returned a verdict for plaintiff in the amount of $9,000. Defendant filed a motion for judgment n.o.v., which was refused, and a motion for a new trial, which was granted because of the excessiveness of the verdict. As above stated, defendant appeals from the order of the court below refusing to grant judgment n.o.v., and plaintiff appeals from the order granting a new trial. We will first consider defendant's appeal.

The opinion of the court en banc held that the presence of the steel at the edge of the platform at the time

of plaintiff's injury did not constitute negligence on the part of the defendant railroad company in the absence of actual or constructive notice to it that a danerous condition existed, and that the evidence failed to  disclose any such notice other than through plaintiff himself.  The opinion then continued: "However, plaintiff's counsel contends that our attention should not be limited solely to the pile of steel which caused the accident but should include other factors as well, viz.; the blank wall on the other side of the track affording no walking area for crewmen, the limited width of the actual track area, and the congested or as plaintiff expressed it: 'the littered condition' of the platform area with piles of steel sheets occupying the regularly established aisles set apart for use in moving the steel into position for shipment . . . It was solely on account of these additional conditions that the case was submitted to the jury; for the express purpose of determining from them whether the defendant had any constructive notice of existing hazards at the place plaintiff was assigned to work.  The issue therefore, was narrowed to the inquiry by the jury whether such congestion behind the cleared area along the edge of the platform was such as to warn defendant that there might be encroachments or impediments within that area as to interfere with plaintiff's performance of the duties assigned to him.".  The court then held that because of the decisions of the United States Supreme Court in *Lavender, Administrator v. Kurn et al., Trustees et al.,* 327 U. S. 645; *Bailey, Administratrix v. Central Vermont Railway, Inc.,* 319 U. S. 350; *Urie v. Thompson, Trustee,* 337 U. S. 163, and *Stone v. New York, Chicago & St. Louis Railroad Co.,* 344 U. S. 407, it was bound to submit the issue of defendant's negligence to the jury.

In support of the position taken by the court below in this respect, plaintiff argues that because of these cases and a few others containing similar language, ". . . just about every case of injury to a railroader must be submitted to the tribunal of fact.".

Under the provisions of the Federal Employers' Liability Act, contributory negligence is no bar to a recovery; rather it has the effect of diminution of the damages in proportion to the relative amounts of negligence and contributory negligence which caused the injury. However, the Act does require that plaintiff's injury be caused at least in part by the negligence of the defendant. In the absence of negligence of the defendant as a causal factor in plaintiff's injury, there can be no recovery. Where plaintiff's evidence of negligence and causation amounts to nothing more than a scintilla, the court must enter judgment for the defendant as a matter of law: *Brady, Administratrix v. Southern Railway Co.*, 320 U. S. 476. The cases of the Supreme Court of the United States cited in the opinion of the court en banc and relied upon by plaintiff do not hold otherwise. It is true that in some of those cases there is language used in dictum which would tend to diminish the power of a court to exercise its usual judicial control of a verdict where plaintiff's evidence falls below the minimum standard accepted as a basis for the establishment of liability. For example in *Lavender v. Kurn*, supra, the authority principally relied upon by plaintiff, the opinion stated at p. 653: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference.

Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.". Although this statement seemingly enlarged the function of the jury under the facts of the case, it does not have the effect ascribed to it by plaintiff. It requires that the evidence be such "that fair-minded men may draw different inferences", and that there be an "evidentiary basis" to support the jury's verdict. The "speculation" portion of the above quotation was clarified by the Supreme Court of the United States in *Moore, Administratrix v. Chesapeake & Ohio Railway Co.*, 340 U. S. 573, 578, where the court stated: ". . . Speculation cannot supply the place of proof.". In actions under the Federal Employers' Liability Act the Federal courts have consistently required that plaintiff furnish evidence of negligence and causation of a standard that a jury could *reasonably* find liability in order to sustain a verdict: *Brady v. Southern Railway Co.*, supra; *Moore v. Chesapeake & Ohio Railway Co.*, supra; *Eckenrode, Administratrix v. Pennsylvania Railroad Co.*, 71 F. Supp. 764, aff'd 164 F. 2d 996, aff'd 335 U. S. 329; *Gill v. Pennsylvania Railroad Co.,* 201 F. 2d 718, cert. denied 346 U. S. 816; *Atlantic Coast Line R. Co. v. Coleman*, 182 F. 2d 712; *Trust Company of Chicago, Administrator v. Erie Railroad Co.*, 165 F. 2d 806, cert. denied 334 U. S. 845.

Our inquiry is therefore directed to the question whether the evidence produced by the plaintiff in the instant case is such that a jury could reasonably find

that defendant was negligent and that such negligence caused plaintiff's injury. Plaintiff's theory of negligence was that defendant did not furnish plaintiff with a reasonably safe place in which to work. It is contended that defendant was negligent in failing to provide clearance to permit plaintiff to pass on either side of the track because of the blank wall on one side and the obstruction on the platform on the other side. It is clear that no finding of negligence may be predicated upon the construction of the track itself. A railroad company has no duty of furnishing clear space for passage on both sides of standing cars. Although we have assumed in our statement of facts that there was insufficient space between a standing car and the blank wall to permit passage,[1] there was ordinarily a space for free and unobstructed passage on the platform side. This is all that is required so far as construction is concerned. The rule that neither courts nor juries may determine engineering questions of this nature has been firmly established for many years: *Toledo, St. Louis & Western Railroad Company v. Allen,* 276 U. S. 165; *Delaware, Lackawanna and Western Railroad Company v. Koske,* 279 U. S. 7; *Gill v. Pennsylvania Railroad Co.,* supra.

As was held by the court below, the presence of a pile of steel close to the edge of the shipping platform does not in itself make defendant guilty of negligence. Plaintiff admits that the steel was always handled by Jones & Laughlin employes and there is no possible basis for an inference that any of defendant's employes placed the steel in such a manner as to obstruct plaintiff's passage. In order to render de-

---

[1] This state of facts was assumed by counsel for plaintiff and by the court below. The record is very vague on this point. The exact dimensions of the track or the space between the track and the wall are not stated at any point in the testimony.

fendant negligent plaintiff had the burden of producing evidence to show either that defendant knew of the presence of the steel and failed to cause it to be removed or that defendant should have known of the presence of the obstruction. There was no attempt made to show that defendant had actual knowledge of the existence of an obstruction in the passageway. In order to establish that defendant had constructive knowledge, plaintiff had the burden of producing evidence to show either that the steel had obstructed the passageway for an unreasonable period of time or that one of defendant's employes other than plaintiff[2] had the duty of inspecting the premises for safety conditions and failed to do so with the result that the steel continued to obstruct the passageway when the accident occurred. No evidence was offered as to how long the steel was present in the passageway. The only possible inference permissible from the evidence is that it was not present when the previous shift was made about eight hours earlier. Plaintiff made some effort to argue that the yardmaster had the duty or at least the custom of inspecting premises for safety conditions before sending a crew to shift cars. However, plaintiff himself testified that he as conductor was in charge of the train and the crew, and plaintiff produced no testimony to the effect that the yardmaster had a custom or duty to so inspect nor any rule of the defendant railroad imposing that duty on the yardmaster. On the contrary, Rule 85 of defendant's operating rules, introduced by defendant, indicates that the conductor

---

[2] It is elementary that a plaintiff's own negligence cannot be imputed to a defendant carrier and used as the basis of charging the carrier with negligence: *Eckenrode v. Pennsylvania Railroad Co.*, supra; *Frese, Administratrix of Frese v. Chicago, Burlington & Quincy Railroad Company*, 263 U. S. 1; *Unadilla Valley Railway Company v. Caldine, Administrator*, 278 U. S. 139.

is responsible for the safety of the train and the conduct of the crew. There is nothing in the record to justify an assumption that the yardmaster had a duty to inspect the premises for safety conditions before sending a crew to shift cars, and such assumption to be of any effect would require the further completely unwarranted assumption that if the yardmaster had inspected he would have discovered the obstruction since there is no evidence whatever as to how long the obstruction was present. Under the evidence the steel could have been placed in the passageway only a few minutes before plaintiff was injured.

There is one other matter to be considered with respect to any possible negligence on the part of the defendant under the evidence, and that is the so called "littered condition" of the platform area behind the portion marked off as a passageway. Again there is no evidence that defendant had any notice of the manner in which Jones & Laughlin piled steel in the area behind the passageway, and, what is more important, there is no evidence that any practices followed by Jones & Laughlin employes in the handling and piling of steel in the area behind the passageway (which created no danger to defendant's employes) were such that defendant could reasonably have anticipated that obstructions would be placed in the passageway area. Further, there is no evidence that there had been at any time in the past any encroachment by Jones & Laughlin employes in piling steel into the area set aside as a passageway for the use of railroad employes. There is no basis in the evidence for a finding of negligence on the part of defendant on this theory.

The conclusion is inevitable that on no theory advanced by the plaintiff is there evidential support for a finding that defendant was negligent. Moreover, even if we assume that defendant was negligent, plain-

tiff still cannot recover because the presence of the steel in the passageway or elsewhere was not the proximate cause of plaintiff's injury. Plaintiff saw the obstruction and stopped his train. He then had a choice of four possible courses of action: (1) he could have required the Jones & Laughlin employes to remove the steel; (2) after stopping the train, he could have left the mill by the same route by which he entered; (3) he could have ordered the engineer to pull the cars past the obstruction, descended to the track level until he cleared the obstacle, then resumed walking out on the platform; or (4) he could have attempted to squeeze between the steel and the railroad cars. A choice of any of the first three courses would have permitted plaintiff to make a safe and easy exit from the mill. Rather than use any of the safe methods, plaintiff consciously and deliberately selected the only course which contained any real possibility of danger to himself. Plaintiff's own foolhardy choice was the sole cause of his injury and cannot furnish the basis for a recovery against the defendant. Even if negligence by defendant is assumed, plaintiff's actions were a superseding cause, and there is no causal relationship between the assumed negligence of defendant and the injury to plaintiff. Unless defendant's negligence is the cause of plaintiff's injury, there can be no recovery. See *Brady v. Southern Railway Co.*, supra; *Moore v. Chesapeake & Ohio Railway Co.*, supra; *Eckenrode v. Pennsylvania Railroad Co.*, supra; *Gill v. Pennsylvania Railroad Co.*, supra; *Wetherbee, Administratrix v. Elgin, Joliet & Eastern Railway Co.*, 204 F. 2d 755, cert. denied 346 U. S. 867; *Willis, Executrix v. Pennsylvania Railroad Co.*, 122 F. 2d 248, cert. denied 314 U. S. 684.

There is no evidence either of negligence or causation in the instant case which is sufficient for any rea-

sonable and unprejudiced trier of fact to find or infer that defendant was liable to plaintiff. Since judgment n.o.v. must therefore be entered in favor of defendant, it is unnecessary to consider plaintiff's appeal from the order granting a new trial.

The orders of the court below refusing to enter judgment n.o.v. and awarding a new trial are reversed and judgment is here entered for defendant.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The train of reasoning employed by the Majority in this case speeds past numerous danger signals proclaimed by decisions of the Supreme Court of the United States and thus carries the plaintiff's rights to an inevitable and unmerited disaster. The Majority has particularly failed to note the warning set forth in the case of *Blair v. B. & O. RR.*, 323 U. S. 600, where the United States Supreme Court reversed this Court because it ignored the specific provisions of the Federal Employers' Liability Act, 45 U.S.C.A., §51 et seq., as it is again doing here. In that case, the plaintiff railroad worker was injured while moving a large pipe from a freight car across the freight house floor to the consignee's truck. The pipe, being oily and greasy, slipped from the vehicle being propelled by the plaintiff, and he was injured. In the Court of Common Pleas of Allegheny County he recovered a verdict of $12,000, but this Court said: "We can see nothing in that evidence that would justify a finding that defendant's servants were negligent in handling the freight. As the witness said, when the pipe was balanced on the truck, 'All you had to do was push and steady it'; a risk of the employment was that the equilibrium of the pipe might be disturbed but that was a risk which the workman assumed . . . The obvious risk of the em-

ployment was that the pipe might get out of balance and if it did, that men would instinctively act to protect themselves. We see no evidence to support a finding of negligence." (349 Pa. 436, 440). And with such a pronouncement this Court entered judgment for the defendant. The plaintiff appealed to the Supreme Court of the United States which found our Court to be in error in its position that the plaintiff assumed the risk of employment. The Supreme Court pointed out that the question of negligence in this type of case was to be determined from *all* the facts: "The negligence of the employer may be determined by viewing its conduct as a whole . . . And especially is this true in a case such as this, where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts character to the others . . .

"We cannot say as a matter of law that the railroad complied with its duties in a reasonably careful manner under the circumstances here, nor that the conduct which the jury might have found to be negligent did not contribute to petitioner's injury 'in whole or in part.' Consequently we think the jury, and not the court, should finally determine these issues." (323 U. S. 604-5).

The Federal Employers' Liability Act of 1908, no part of which the Majority quotes, makes the carrier liable in damages for any injury or death "resulting in whole or in part from the negligence" of any of its "officers, agents, or employees." Can the Majority say with absolute Judgment Day finality that the injuries sustained by Thomas E. Finnegan in this case did not result at least *in part* from the negligence of the defendant railroad?

The Majority treats this case as if it were an ordinary common law action burdened with all the restric-

tions which the Federal Employers' Liability Act (hereafter to be referred to as the FELA) has definitively discarded. The Majority speaks of notice to the defendant, lack of duty of inspection, and contributory negligence (the Majority introduces a novation and calls it "foolhardy choice"), but these technical defenses alone or together, cannot, under the decisions of the United States Supreme Court, bar recovery if it can be shown that the plaintiff's injuries resulted at least *in part* from negligence by the railroad.

The Majority has completely ignored the 1939 amendment to the FELA (53 Stat. 1404, 45 U.S.C.A. 51) which completely obliterates, like a wave washing over imprints in the sand, the archaic concept of assumption of risk. An employe takes what his employer gives him. It is not for him to decide the equipment of the factory in which he works. He does not lay down the tracks over which, as conductor or brakeman, he is to shepherd the train to which he is assigned. Congress had attempted to wipe away the assumption of risk theory when it first passed the FELA, but courts throughout the nation, almost nostalgically or with incredulity that such a landmark in the law should really have disappeared, continued to charge injured employes with responsibility for the dangerous environment in which they were compelled to work. To reaffirm what they thought they had made clear in the original Act, the Federal lawmakers then in 1939 added the amendment which was intended to relegate the *assumption of risk* doctrine to a relic in the museum of the law. In transparent language Congress declared that an "employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." The Supreme Court of the United States, then,

affirming and approving the Congressional action, declared that the assumption of risk being dead and buried was not to be disinterred and re-introduced under some other designation. In language as clear as the morning sunrise, the Supreme Court of the United States said: "We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence.' As this Court said in facing the hazy margin between negligence and assumption of risk as involved in the Safety Appliance Act of 1893, 'Unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name;' and no such result can be permitted here." (*Tiller v. Atlantic Coast Line R. Co.,* 318, U. S. 54, 58.)

But the Majority here, apparently treating these words like vanishing shadows on the monument of time, is doing here the very thing which the Supreme Court of the United States has forbidden. The Majority has clothed the ghost of assumption of risk in the nondescript garment of "non-negligence" and by doing so has deprived Thomas Finnegan of the financial crutch with which a jury of his peers had supplied him because of the crippling injuries he sustained on April 30, 1949.

The real issue in this case is negligence. And negligence is defined as lack of care under the circumstances. This means in effect that no person, under penalty of financial responsibility for resulting injuries, may fail to perform a duty which is reasonably foreseeable. Could the defendant in this case anticipate that the steel sheets piled by the employes on the loading platform might some day project beyond the edge of the platform? Taking human nature as it is and accepting

the generalized conduct of the average human being as it evolves in the hurly-burly activities of the workaday world, it was as inevitable as sparks fly upwards that there would come a day when these employes would slam down the sheets of steel with such abandonment of control that pieces would project beyond the yellow line painted 3 feet from the edge of the loading platform. Steel plates coming from a hot steel mill are not handled with the nicety of pancakes. The steel sheets in question measured 4 feet by 10 feet. A painted line could no more exempt them from the laws of gravitation and momentum than an oral command could. Nothing short of a solid barrier of some kind could guarantee that corners of the sheets would not extend close to or project over the railroad tracks. The law of physics cannot be amended or nullified by a court decision.

Should the railroad company have prepared a barrier to prevent the steel sheets from sliding or slipping? Should there have been someone stationed at the loading platform to make certain that the steel sheets were lowered and stacked in such a manner as not to impede the passage of railroad cars? Did the railroad company do all that was reasonably possible to avoid accidents to its employes? Only a fact-finding tribunal could answer these questions. And the tribunal to which Congress and the Supreme Court of the United States have assigned the task of ascertaining the facts has declared by its verdict that the railroad company did not acquit itself of the burden of due care imposed on it by the law.

By what authority now does this Court wipe out the verdict of the jury, flout the will of Congress, and disregard the precedents laid down by the highest Court of the land?

In an attempted rationalization of its drastic decision, the Majority says that a railroad company "has no duty of furnishing clear space for passage on *both* sides of standing cars." * No one claims that there should be a clear space on *both* sides. However, common sense and common safety dictate that if railroad employes are required to move alongside cars they must have clear space for such movement at least on *one side* of the track.

The Majority Opinion says further: "Although we have assumed in our statement of facts that there was insufficient space between a standing car and the blank wall to permit passage, there was *ordinarily* a space for free and unobstructed passage on the platform side." But this was not an ordinary situation. Corners of steel sheets had invaded this ordinarily free space. Did this constitute negligence or not?

The Majority Opinion states that it is not in possession of the precise facts: "The record is very vague on this point. [space between car and wall]. The exact dimensions of the track or the space between the track and the wall are not stated at any point in the testimony." Can this Court, or *should* this Court decide cases on unknown facts? Can justice move over a phantom track of spectral dimensions? If there are not enough facts on which to found a reliable decision, should there not be a new trial ordered? To adjudicate the claim of an injured person on an incomplete record (if it is incomplete) is not a reassuring precedent to establish.

I am satisfied that the record *is* complete and under it Thomas Finnegan is entitled to retain the financial wheel chair the jury provided him with. The facts in this case are far more specifically depicted and more

---

* Italics throughout, mine.

completely establish negligence than the facts in many other cases in which the Supreme Court of the United States upheld jury verdicts for the plaintiffs. Let us look at the case of *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54. There the plaintiff's decedent, a railroad policeman, was standing between two railroad tracks which allowed him only 3' 7½" of space when trains were moving on both sides. While Tiller was inspecting equipment on a train moving slowly on one track he was struck and killed by a train backing in the opposite direction on the other track. At the trial the plaintiff alleged negligent operation of the car which struck the decedent and failure to provide a reasonably safe place in which to work. After the plaintiff's evidence had been introduced, the defendant company moved for a directed verdict on the ground that no actionable negligence had been established. The trial Court granted the motion and the Circuit Court of Appeals affirmed, holding that the decedent had assumed the risk of standing between the tracks and that, therefore, there was no duty owing to him by the railroad company. Specifically the Circuit Court said: " 'The conclusion is inescapable that Congress did not intend to enlarge the obligation of carriers to look out for the safety of their men when exposed to the ordinary risks of the business, and that in circumstances other than those provided for in the amended section of the statute, the doctrine of the assumption of the risk must be given its accustomed weight.' " (318 U. S. 57).

But this position had already been repudiated by Congress and it was re-repudiated by the Supreme Court of the United States when it reversed the decision of the Circuit Court and held: "The doctrine of assumption of risk can not be 'abolished in toto' and still remain in partial existence as the court below suggests. The theory that a servant is completely barred from

recovery for injury resulting from his master's negligence, which legislatures have sought to eliminate in all its various forms of contributory negligence, the fellow servant rule, and assumption of risk, must not, contrary to the will of Congress, be allowed recrudescence under any other label in the common law lexicon . . . In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. A fair generalization of the rule is given in the Senate Committe report on the 1939 amendment: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.' Of course in any case *the standard of care must be commensurate to the dangers of the business.*" (pp. 66-67)

Did the defendant railroad company in the instant case maintain the standard of care which was commensurate with the dangers attendant on the piled-up steel? That was a question precisely for the jury to answer. And the jury did answer the question and I do not see how, if we are to respect the precedents of the Supreme Court of the United States, we can or should overturn the decision of the jury.

The Majority says that: "In order to establish that defendant had constructive knowledge, plaintiff had the burden of producing evidence to show either that the steel had obstructed the passageway for an unreasonable period of time or that one of defendant's employes other than plaintiff had the duty of inspecting the premises for safety conditions and failed to do so

with the result that the steel continued to obstruct the passageway when the accident occurred."

The Majority does not offer any authority for the statement that the plaintiff had the burden of showing that the steel had obstructed the passageway for an unreasonable period of time. In *Bailey v. Central Vermont Ry.*, 319 U. S. 350, 353, the Supreme Court of the United States declared: "That duty of the carrier is a 'continuing one' (Kreigh v. Westinghouse & Co., supra, p. 256) from which the *carrier is not relieved by the fact that the employee's work at the place in question is fleeting or infrequent.*"

In the *Bailey* case the plaintiff's decedent was unloading a car on a bridge 18 feet above the ground. The only available footing at the side of the car was about 12 inches wide. Of this space 8 or 9 inches were taken up by a timber which lay across the ties and was set in 3 or 4 inches from their ends. Using a wrench, with whose operation he was not familiar, Bailey was thrown to the roadway below and fatally injured. A verdict returned in favor of the plaintiff was reversed by the Supreme Court of Vermont on the ground that no negligence was shown. The Supreme Court of the United States, however, reversed the Supreme Court of Vermont, and said: "The nature of the task which Bailey undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a guard rail, the height of the bridge above the ground, the fact that the car could have been opened or unloaded near the bridge on level ground—all these were facts and circumstances for the jury to weigh and appraise in determining whether respondent in furnishing Bailey with that particular place in which to perform the task was negligent. The debatable quality of that issue, the fact that fair-minded men might reach different conclu-

sions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue (Tiller v. Atlantic Coast Line R. Co., supra) as well as issues involving controverted evidence . . . *To withdraw such a question from the jury is to usurp its functions."*

Applying the logic of the United States Supreme Court in the *Bailey* case to the present case, it can be said that the nature of the task which Finnegan undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a barrier of protection, the height of the platform above the track, the fact that the plaintiff had no way to pass the car on the other side because of the wall—all these were facts and circumstances for the jury to weigh and appraise in determining whether the railroad company in furnishing Finnegan with that particular place in which to perform that task was negligent. The United States Supreme Court said further in the *Bailey* case:

"The right to trial by jury is a 'basic and fundamental feature of our system of federal jurisprudence.' . . . It is part and parcel of the remedy afforded railroad workers under the Employers Liability Act. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries.

*"To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."* (P. 354.)

The Majority Opinion says that Finnegan could have averted injury if he had "left the mill by the same route by which he entered." Whether this failure to take a longer route deprived Finnegan of the right

of recovery was a question for the jury to decide. The same question of fact was involved in the case of *Wilkerson v. McCarthy*, 336 U. S. 53. There the plaintiff was injured when in crossing over a wheel pit on a narrow boarding he slipped and fell. The plaintiff claimed damages on the ground that the defendant company had failed to provide him with a safe place in which to work. The trial court rejected the claim and entered a verdict for the defendant company. The action was affirmed by the Supreme Court of Utah which stated that the plaintiff would not have been injured had he taken a longer and different route. But the Supreme Court of the United States reversed the Utah Supreme Court and said: "There was, as the state court pointed out, evidence to show that petitioner could have taken a slightly longer route and walked around the pit, thus avoiding the use of the board. This fact, however, under the terms of the Federal Employers' Liability Act, would not completely immunize the respondents from liability if the injury was 'in part' the result of respondents' negligence. For while petitioner's failure to use a safer method of crossing might be found by the jury to be contributing negligence, the Act provides that 'contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Thus, in the instant case, if Finnegan is to be charged with contributory negligence, the size of his verdict may be reduced by the jury in proportion to the amount of negligence attributable to him.

The Majority enumerates various types of evidence that the plaintiff failed to produce. It is not the province of an appellate court to portray the perfect case and then deny recovery to the injured person because he has failed to measure up to that imagined and con-

jured perfection. The plaintiff here produced what was available to him and the jury returned a verdict on that evidence. He should not be penalized because some of the lights and shadows were omitted from the picture. In the *Wilkerson* case the Supreme Court of the United States declared that it was enough in deciding the issue there to determine whether the pit workers alone used the walkway or whether employees generally so used it. "While this left only a very narrow conflict in the evidence, it was for the jury, not the court, to resolve the conflict."

The action of Finnegan in walking along the railroad car was not as "foolhardy" as the Majority makes out. There was no other place for him to walk. The cars in the train had no inseal (a ledge some 6 inches wide on the edge of the car). Deprived of a place to stand, the plaintiff was compelled to walk alongside the car. The general yardmaster, Melvin E. Wynn, called by the defendant, testified that Finnegan's actions at the time of the accident constituted "good railroad practice."

Upon what superior wisdom does the Majority draw when it says that Finnegan should not have done what a railroad expert has testified was "good railroad practice"? Judges unquestionably know more about logic and legal principles than brakemen, engineers and yardmasters, but I doubt they have more dependable knowledge than experienced railroad men as to what constitutes correct procedure in any given railroad emergency.*

With every deference to my brethren of the Majority I must say that they approach the deliberation of this case on a strange track of logic. They say: "Our inquiry is therefore directed to the question

---

* *Brady v. Southern Ry. Co.*, 320 U. S. 476, 487-8.

whether the evidence produced by the plaintiff in the instant case is such that a jury could reasonably find that defendant was negligent and that such negligence caused plaintiff's injury." This statement flagrantly defies both the letter and the spirit of the FELA. The plaintiff does *not* have to show that the defendant's negligence "caused plaintiff's injury." The plaintiff is only required to show that the defendant's negligence contributed *in part* to the happening of the accident. The plaintiff may have been 65% at fault and the defendant only 35%, and the plaintiff could recover nonetheless, the amount of his verdict being reduced according to the degree his own negligence contributed to his injuries.

The Majority Opinion, in my judgment, excursions over many unsteady tracks of reasoning. It says, for instance, "It is clear that no finding of negligence may be predicated upon the construction of the track itself." But it is *not* clear that no finding of negligence may be predicated upon the construction of the track. As a matter of fact, the jury could well have found that the construction of the track was one of the main causes of the accident. It cannot be questioned that if the track had been constructed with enough space on either side for the workmen to pass, the accident could not have happened. Was it negligence for the railroad company not to have constructed the track with a margin of safety on one side or the other? This was a question of fact for the jury.

The Majority says: "In order to render defendant negligent plaintiff had the burden of producing evidence to show either that defendant knew of the presence of the steel and failed to remove it or that defendant should have known of the presence of the obstruction."

The answer to this observation is obvious: How could the railroad company not have known of the presence of the steel? Steel plates measuring 4 feet by 10 feet do not blow around in a mill like autumnal leaves in a forest. The fact that so huge an accumulated bulk was present proves by its very presence that it must have been there for an appreciable period of time. At any rate, it was for the jury to decide whether the presence of the gargantuan bulk could have sprung up in a matter of minutes so as to exclude the possibility of the employer's knowledge or whether so enormous a steelscape could only have been built up over such a period of time that railroad authorities could not help but have constructive knowledge of its existence.

The Majority says: "The only possible inference permissible from the evidence is that it [the steel] was not present when the previous shift was made about eight hours earlier."

*Why* is that the inference? And even if it were a valid inference, that inference would not exclude the hypothesis that the steel had been placed there not 8 hours before, but possibly 7 hours before or 5 hours before.

Approaching the subject from another angle, the Majority then said: "Under the evidence the steel could have been placed in the passageway only a few minutes before plaintiff was injured." This Court has stated hundreds of times that the winner of a verdict is, on an appellate review, entitled to the benefit of every proved fact and every inference to be drawn from those facts. The Majority in its Opinion honors this rule with unbroken consistency by deciding every inference *against* the verdict winner. In doing this, it does what the Supreme Court of the United States said it should not do: "It is not the function of a court to search the

record for conflicting circumstantial evidence in order to take the case *away from the jury* on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. *It is the jury, not the court,* which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. [citing cases] That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." (*Tennant v. Peoria & P. U. Ry. Co.,* 321 U. S. 29, 35).

When is the FELA to be accorded the privileges of the main track through the yards of railroad law, and when is it to be shunted on to a forgotten siding? The cases in the United States Supreme Court reports and other Federal reports are legion that if the factual situation in any railroad employe accident is such that *some* negligence may be attributed to the railroad, the jury must decide whether liability in damages attaches. After reading the record in the present case I find it impossible to say there was no possibility at all that the railroad company could not have been responsible in negligence for the happening of the Finnegan accident. The Majority says: "Moreover, even if we assume that defendant was negligent, plaintiff still cannot recover because the presence of the steel in the passageway or elsewhere was not the proximate cause

of plaintiff's injury." In the light of the Supreme Court decisions and all other Courts that have authoritatively spoken on this subject, this conclusion on the part of the Majority is utterly insupportable in law and logic. *Proximate cause is as much a jury question as negligence itself.* If the Majority can assume that the defendant was negligent then it cannot take away from the jury the question as to whether that negligence was the proximate cause of the accident. This is elemental.

The decision of the Majority inflicts an absolute injustice on the plaintiff. That result, deplorable as it is, is not, however, as damaging as the disservice it does to the concept of the seriousness and solemnity of jury findings. Nor is it as damaging as the disservice it does to the whole sociological, philosophical, and juridical program of the Federal Employers' Liability Act. This legislation represents a great social and economic advance in the centuries-old struggle against such inhuman and unjust doctrines as fellow-servant rule, contributory negligence and assumption of risk. To say that a railroader assumes the faults and careless conduct of his thousands of fellow-employes does violence to the most elemental sense of fairness. And yet up until 1906 courts gravely imposed such barriers to recoveries in the most meritorious of causes.

The FELA is a laudable piece of legislation in that it seeks to protect life and limb of workmen engaged in a most hazardous occupation. Although a housewife, when her husband railroader departs for work, no longer bids farewell to him as if he were a soldier going to war, she still knows that behind every telephone ring there lurks the fear of bad news. Accidents, wrecks, derailments and explosions still form part of the saga of railroads. Our lawmakers, because of their experience and knowledge and because of long, search-

ing Congressional committee investigations, have taken cognizance of the dangers attendant upon railroading and thus, in the conscientious discharge of their legislative duties, they have provided protection for the workers and, in the event of death, for aid to their surviving dependents. The Federal Employers' Liability Act seeks under Federal jurisdiction to accomplish the humanitarian results flowing from States Workmen's Compensation Acts. While the FELA does not go so far as to provide for recovery in every case of death and injury, regardless of circumstance, it does say, as already indicated, that where negligence on the part of the railroad company in whole or in part is responsible for casualties, the railroad company shall make whole the resulting damage to the extent that a financial award can do so. The payment of such an award is as much a part of the legitimate expense of running a railroad as the maintenance of the right-of-way because it is known that even with every good will in the world, a switchman may fail to throw a switch, a brakeman may nod in the night watches, a defective wheel may break and a supervisor may fail to keep piled-up steel away from a railroad track.*

The Majority Opinion not only regards with slight obeisance the decisions of the Supreme Court of the United States but it equally ignores the authoritative expression of this very Court in a decision rendered as recently as April 10, 1950. (*Buffo v. B. & O. R. R. Co.*, 364 Pa. 437). There, the plaintiff recovered a verdict as the result of an accident which resulted from his falling over some rivet heads, bolts and scrap. This Court affirmed the verdict, and, speaking through Mr.

---

* A tabulation appearing in the case of *Tiller v. Atlantic Coast Line R. Co.*, 318 U. S. 54, 59, shows that in 1936, 593 railroad workers were killed and 9,021 injured and that in 1940, the casualty list reached 475 killed and 7,956 injured.

Justice ALLEN STEARNE, said: "Where . . . there is a question whether such employer's conduct measures up to reasonable standards in the circumstances, the issue of negligence must be submitted to the jury. It is immaterial that the law of this Commonwealth may be otherwise; as above stated, *the Supreme Court of the United States is the final arbiter in cases under this Act.* That Court has repeatedly recognized the importance of preserving for litigants their right to a jury trial."

The defendant argued in the *Buffo* case that there was insufficient evidence to support a finding of negligence on the part of the defendant and that the plaintiff's injuries were the result of his own negligence in working amid rivets, bolts and scrap. Mr. Justice ALLEN STEARNE, replying to this argument, wrote: "Even if there was sufficient evidence to declare contributory negligence as a matter of law, plaintiff would not be barred completely from recovery. Defendant seeks to exculpate itself from its failure to provide a reasonably safe place to work by the argument that if plaintiff '. . . thought the presence of the rivet heads and small pieces of pipe was creating a hazard, then all [plaintiff] had to do before beginning work was to brush it out.' Defendant argues: 'If [plaintiff] did not think it was hazardous, how can the defendant railroad company be held liable for failing to do so?' Such considerations are foreign to the law of negligence under the Federal Employers' Liability Act as declared by the Supreme Court of the United States. *Defendant's negligence cannot be determined by examining plaintiff's conduct.* To do so would be to apply contributory negligence as a defense under the guise of 'non-negligence' of the defendant, which the Act prohibits. Cf. Tiller v. Atlantic Coast Line Railroad Co., 318 U. S. 54, 58. It cannot be held that the

failure of the *injured party* to perceive a negligent condition *establishes the absence of negligence* on the part of the defendant." (Italics in original decision).

The Majority in the instant case is seeking to do what this Court inveighed against in the *Buffo* case: It attempts to make of contributory negligence "non-negligence" and, because the plaintiff failed to perceive the negligence of the defendant, it attempts to make of this non-perception of negligence the absence of negligence.

If the steel had not been piled close to the railroad track, Finnegan would not have been injured. That much must be admitted. Who was responsible for piling the steel at that hazardous location? If this Court confirmed negligence against the railroad carrier in the *Buffo* case for allowing rivets, bolts and scrap to remain where the plaintiff himself knew where they were, how can it exculpate the railroad carrier from a similar charge of negligence when it allowed steel plates to menace life and limb of railroad employes whose duty required them to work in the vicinity of those threatening plates? How can the Court make flesh of Buffo and fowl of Finnegan? Where is the difference in principle of law between those two cases? Does the defendant think less of Buffo in 1954 than it did in 1950? If it does, the reasoning for thinking so does not appear in the Majority Opinion.

I vigorously dissent.