## Frankiewicz v. Reading Company
## Grubb, Admx. v. Reading Company

*Arnold Levin*, for plaintiffs.

*John R. Warner*, for defendant.

McCLANAGHAN, J., January 31, 1972.—In February and March 1963, plaintiffs, Edward Frankiewicz and Stanley Chybinsky, were employed for a period of about four weeks at the Port Richmond Elevator Co., Inc., in Philadelphia. By a lease dated June 25, 1962, the Reading Company had leased to Port Richmond Elevator Company, Inc., all that certain grain elevator property, buildings, equipment, etc., described in said lease and a plan attached thereto for a term of three years from July 1, 1962. Certain rights were reserved to the lessor subject to the proviso that the exercise of said rights not impair lessee's full and complete use of the premises. The lease contained a clause whereby the lessee agreed to hold harmless the lessor against all claims, etc., arising from the use, operation, occupation, etc., of said premises.

Plaintiffs' testimony was that they obtained their employment, which was temporary in nature, by applying at the office of the Port Richmond Elevator Co., Inc., located on the premises. Plaintiffs were assigned on the night shift as part of a crew of seven or eight men to unload grain from box cars. Plaintiffs testified that the box cars in which the grain was contained, were of metal construction and bore the names of various railroads but that the engines bore only the name Reading Co.

Plaintiffs testified that an engine would leave the cars at a location close to the dumping shed. Cars were pulled into the shed, one at a time. A member of the crew in which plaintiff worked would connect a cable,

attached to a winch situate in the dumping shed, to the car and pull it up into the shed. After a car had been emptied, one of the crew would climb onto the car, release the brake and by gravity the car went down the slope, over another hump and out into the yard. Defendant company did not pull the cars into or out of the dumping shed.

Plaintiffs testified that the "good cars" were emptied by mechanically lifting and tilting the cars but that in the "bad cars" (grain fermented and caked) it was necessary to go into the cars with a power shovel to pull out the grain.

Plaintiffs testified that the only air in the box cars was by means of the open doors of said cars and that it was hot and dusty in the cars. When there were no cars to be emptied, the crew was assigned to work in the pit below, to shovel onto conveyor belts, the grain that had spilled. It was testified that this work in the pit was a very dusty job. It was admitted that, at the office, plaintiffs were supplied with protective masks; the gauze pads of which had to be replaced from time to time when they became too wet. It was also admitted that plaintiffs received their orders from the supervisor of Port Richmond Elevator Co., Inc., and had no contact with any representative of the Reading Company at any time.

Prior to trial, plaintiff, Stanley Chybinsky, had died from causes not related to the instant matter. Loretta Grubb, Administratrix of his estate, prosecuted his action. Both plaintiffs alleged that as a result of working in the box cars containing the fermented grain, they became ill, were obliged to seek medical attention and became unable to continue with said employment. Plaintiff, Stanley Chybinsky, was in Northeastern Hospital for a period of four days and plaintiff, Edward Frankiewicz, saw Dr. Cohen about six

times. Plaintiff Chybinsky returned to his regular employment as a longshoreman and plaintiff Frankiewicz to his usual regular trade as a house painter. Dr. Eugene M. Schloss examined plaintiff, Stanley Chybinsky, on October 15, 1963, and plaintiff, Edward Frankiewicz, on November 3, 1963. In his deposition which was read at trial, he stated as his opinion that plaintiffs were suffering from "Farmer's lung syndrome" and that their illness was causally related to their employment at the grain elevator.

Plaintiffs assert two theories upon which liability of defendant is predicated. One, upon the basis of the Federal Employer's Liability Act, and, second, on a common-law liability which emphasizes a duty on defendant as the supplier of a chattel (the box cars), to supply a chattel in which plaintiffs could work in safety. Following presentation of plaintiffs' evidence, the trial judge granted defendant's motion for compulsory nonsuits. Plaintiffs filed motions to take off the nonsuits. The motions were argued before a court en banc which unanimously denied the motions.

Does the fact that the grain elevator property was situated on premises connected to the railroad property and that the tracks of the railroad serviced the grain elevator property, make persons hired by the elevator company on a temporary basis, to assist in unloading grain from box cars on the property (the dumping shed) of the elevator company, place those persons so employed within the confines of F.E.L.A.? Does the fact that the grain which was shipped in box cars of various railroads but moved by an engine of defendant Reading Company over its tracks to a point adjacent to the consignee's elevator, place plaintiffs under the umbrella of F.E.L.A. doctrine? Does the fact that the elevator property leased to the Port Richmond Elevator Co., Inc., was owned by defen-

dant Reading Company, mean that the work performed, to wit, the unloading of grain from the box cars, on the leased premises, by persons hired by the Port Richmond Elevator Co., Inc., so further the business of the defendant Reading Company as to require that F.E.L.A. coverage be extended to said employes? The trial judge answered these questions in the negative. Defendant carrier had completed its contract of transportation. The cargo had reached its destination at the point designated by the consignee, to wit, the vicinity of the grain elevator. The consignee had taken on the task of bringing the box cars into the elevator premises, of emptying the cargo and then discharging the box cars from the premises. These operations were performed in toto by employes of the Port Richmond Elevator Co., Inc., which through its agents directed the place, manner and time of bringing the box cars into the dumping shed, the work to be performed on the cars and of the discharge of the cars from the premises. Plaintiffs testified that they had no contact with any agent or representative of defendant, Reading Company, at any time. Defendant did not hire and could not fire the employes. It did not supervise, manage, control or direct their operations. Plaintiff, Frankiewicz, testified that the doors of the box cars would be opened by one of his crew before the car was pulled into the shed. Plaintiff, Chybinsky, testified that they worked only on the "bad (fermented) cars." Thus, it is apparent that the elevator company exercised control over the cars even before the cars were in the shed and directed the "bad cars" to a certain shed. Thus, the facts of the instant case do not place said employes within the purview of the Federal Employers Liability Act.

The testimony of plaintiffs failed to disclose by

whom the box cars were furnished, whether by defendant, Reading Company, or by some other company or railroad. Merely because said box cars were transported over tracks of the Reading Company and moved by its engines at the point of destination to a location where the Port Richmond Elevator Co., Inc., could handle the cars without any assistance from the Reading Company, liability may not be imposed upon defendant for the conditions existing in said box cars by reason of the type of cargo transported therein, absent evidence to show a reasonable basis for imposing liability upon the carrier. No evidence was offered to establish that the Reading Company knew or should have known and realized that the type of cars furnished was improper and dangerous by reason of the type of cargo transported therein. Even if it is assumed that such was the fact, no evidence was offered to show that the type of cars employed were other than the standard type of cars usually employed and equipped for transporting the type of cargo. To argue that the cars should have been better ventilated is an argument without factual supporting evidence in the record. Nor is there anything in the record which shows the condition of the cargo of grain when it was placed in the box cars, or at the time it was picked up by defendant to be transported to its destination. Nor was there any testimony as to the period of time and the circumstances under which the cargo was transported. That the type of cars furnished may well have been proper and adequate for transporting a cargo of grain without unreasonable risk or harm to anyone, including those employes whose duty it was to unload the said cargo, may be deduced from the fact that most of the cars were so-called "good cars" which were unloaded merely by mechanically lifting and tilting the cars. It would appear, therefore, that it

was not the type of car furnished or the structure thereof which brought about the conditions of which plaintiffs complain. Hence, the responsibility for said conditions rests with someone other than defendant.

In essence, plaintiffs' evidence is that a chemical reaction took place in the cargo of grain while it was on board the box cars and defendant, being a railroad carrier, should, therefore, be held responsibble for injuries alleged to have been incurred by plaintiffs when they were unloading said cargo. No evidence was offered to establish that the box cars were structurally defective or so constructed that the use made of said cars was improper. To the contrary, plaintiffs testified that most cars were "good cars," that is, the grain in said cars had not fermented or caked and said cars were unloaded by mechanically lifting and tilting said cars. Hence, it seems a proper conclusion that the type of cars employed was proper and adequate for the particular use. Consequently, a jury could not be permitted to speculate or guess that in some way the defendant carrier had failed in a duty it owed to the plaintiffs. Evidence to show the fact was not presented.

It is basic law that only in a clear case where the minds of responsible men may not honestly differ, may a compulsory nonsuit be granted by the court. Plaintiffs are entitled to have the evidence looked at by the jury, if a reasonable conclusion can be arrived at which would place liability upon defendant: Devenney v. North Franklin Township Volunteer Fire Department, Inc., 209 Pa. Superior Ct. 378 (1967). However, there must be evidence upon which the jury may properly base a finding of liability. In the instant case, plaintiffs' proof was insufficient to support a finding of liability upon the part of defendant. The evidence failed to disclose that defendant breached some duty which it owed to plaintiffs and that the

violation of said duty was the proximate cause of the injury and loss suffered by plaintiffs. In Gilkes v. Levinson, 421 Pa. 128 (1966), where the court pointed out that the equipment involved was admittedly faultless and that there was no evidence that its use for the purpose concerned was improper or wrong in itself, it was held that the mere supplying of equipment for the use intended did not, therefore, constitute negligence. The court ruled that the Restatement 2d, Torts §392, did not apply. The same dogma must be applied to the instant case. In Gilkes v. Levinson, supra, the court discussed the allegation that defendant employer failed to warn plaintiff of the hazard involved in said work and to provide proper assistance. The court stated that the duty of an employer is to warn an employe of dangers to which he will be exposed, *only* if the employer has, or should have, knowledge of such dangers and if the employe is ignorant thereof and if they are not the subject of common knowledge or patent to a person of his proven knowledge and experience: Faulks v. Fischer, 349 Pa. 485 (1944).

The present plaintiffs applied to and were hired by the Port Richmond Elevator Co., Inc. It controlled and directed the work of said employes, designated the time and assigned the place where their labors were to be performed. How can it be said that defendant, Reading Company, was plaintiffs' employer or owed the duty of the employer? Clearly, no duty rested upon defendant carrier to warn persons who were not in its employ of hazards of which it had no knowledge other than that possessed by plaintiffs themselves and the Port Richmond Elevator Co., Inc.

As hereinbefore discussed, the F.E.L.A. doctrine is not applicable under the facts of the instant case. Plaintiffs were not hired by defendant, did not work

under the supervision and control of defendant or upon the premises of defendant. The only evidence of their employment identifies the employer as the Port Richmond Elevator Co., Inc. Nor does the evidence show that the unloading of the cars was in the course of, or so furthered, the business of defendant carrier as to warrant classifying plaintiffs as employes embraced within the coverage of F.E.L.A. The box cars (chattel) were not structurally defective nor was the use of the type of car to transport grain a use so fraught with danger that defendant carrier knew or was bound to foresee such hazard and to warn plaintiffs thereof. No evidence was offered to show knowledge of any defect that should have placed defendant carrier on notice, nor of any condition which a reasonable inspection would have disclosed to defendant carrier: Finnegan v. Monongahela Connecting Railroad, 379 Pa. 63 (1954).

Plaintiffs failed to produce evidence upon which a jury could reasonably conclude that liability should be imposed upon defendant carrier. It was, therefore, the duty of the court to grant defendant's motion for compulsory nonsuits.