STATE OF NORTH CAROLINA v. JERRY ALFORD ADAMS

No. 65

(Filed 16 December 1970)

**Criminal Law §§ 25, 135; Homicide §§ 13, 31— homicide prosecution — voluntariness of nolo contendere plea — effect of death penalty**

The defendant's plea of *nolo contendere* to second-degree murder was voluntarily and intelligently made and was not coerced by fear of the death penalty, where (1) the defendant, a person of average intelligence, was faced with damaging and uncontradicted evidence sufficient to sustain a verdict of first-degree murder; (2) the defendant authorized his counsel to enter the *nolo contendere* plea after he had been fully apprised of his rights and of the effect of entering such plea; and (3) the trial court carefully examined defendant concerning the voluntariness of his plea and adjudged that the plea was voluntarily and intelligently made.

Justice MOORE did not participate in the consideration or decision of of this case.

APPEAL by defendant from *Carr, J.,* at 2 October 1969 Regular Criminal Session of Superior Court of WAKE County.

On 27 July 1969 defendant was arrested on a warrant charging him with first degree murder of George O'Neal Sorrell. A probable cause hearing was held in District Court and defendant was bound over to Wake Superior Court for trial without privilege of bond. On 11 August 1969, Thomas D. Bunn was appointed to represent defendant. Upon petition by defendant's counsel, Judge Leo Carr committed defendant to the State Hospital in Raleigh for observation, examination and treatment, pursuant to G.S. 122-91. On 22 September Dr. Andrew Laczko, Director of the Forensic Unit, Dorothea Dix Hospital, made a "Diagnostic Conference Report and Discharge Summary" on defendant, which concluded:

The psychological testing revealed a full-scale I.Q. of 98, which places this patient in the average intellectual functioning level.

*Diagnosis:* Without Psychosis (Not Insane). *APA Code: 319.80*

*Recommendations:* The examination, observation and testing revealed no evidence of insanity or any other mental disturbance which might interfere with this patient's ability to plead to the Bill of Indictment. Mr. Jerry Alford Adams

can distinguish right from wrong, he understands the true nature and possible consequence of his criminal charges and he is able to assist in his own defense. This patient should be returned to the Court as he is competent to stand trial.

Defendant was thereafter examined by Dr. Nicholos Pediaditakis, Psychiatrist in charge of Wake County Mental Health Center, who at the trial testified:

". . . The facts, the hard fact is that the person was not psychotic at the time of examination and by history and recall, the person was not psychotic at the time of the crime, of the tragedy. Though he gave me evidence that his personality was in such a way as to be triggered from time to time into impulsive aggressive acts."

On 18 August 1969 the Wake County Grand Jury returned a bill of indictment charging defendant with first degree murder. When the case came on for trial, defendant, through his attorney, tendered a plea of *nolo contendere* to the charge of second degree murder. Before the plea was accepted by the State, Judge Leo Carr questioned defendant concerning the voluntariness of his plea and recorded pertinent questions and answers on a "Transcript of Plea," as follows:

The defendant, being first duly sworn, makes the following answers to the questions asked by the Presiding Judge:

1. Are you able to hear and understand my statements and questions?

Answer: Yes sir

2. Are you now under the influence of any alcohol, drugs, narcotics, medicines, or other pills?

Answer: No sir

3. Do you understand that you are charged with the (felony) of Murder in the 2nd degree?

Answer: Yes sir

4. Do you understand that you have the right to plead not guilty and to be tried by a Jury?

Answer: Yes sir

5. How do you plead to these charges—Guilty, not Guilty or nolo contendere?

Answer: Nolo Contendere

6. Have you had explained to you and do you understand the meaning of a plea of nolo contendere?

Answer: Yes sir

7. Do you understand that upon your plea of (nolo contendere) you could be imprisoned for as much as 30 (years)?

Answer: Yes sir

8. Has the Solicitor, or your lawyer, or any policeman, law officer or anyone else made any promise or threat to you to influence you to plead (nolo contendere) in this case?

Answer: No sir

9. Have you had time to confer with and have you conferred with your lawyer about this case, and are you satisfied with his services?

Answer: Yes sir

10. Have you had time to subpoena witnesses desired by you, and are you ready for trial?

Answer: Yes sir

11. Do you now freely, understandingly and voluntarily authorize and instruct your lawyer to enter on your behalf a plea of (nolo contendere)?

Answer: Yes sir

I have read or heard read all of the above questions and answers and understand them, and the answers shown are the ones I gave in open court, and they are true and correct.

s/ Jerry Alford Adams
Defendant

(Sworn to on 24th day of October, 1969)

The trial judge entered the following adjudication:

"[T]he Court ascertains, determines and adjudges, that the plea of nolo contendere, by the defendant is freely,

understandingly and voluntarily made, and was made without undue influence, compulsion or duress, and without promise of leniency. It is therefore, ORDERED that his plea of nolo contendere be entered in the record, and that the Transcript of Plea and Adjudication be filed and recorded."

[The court then heard evidence which tended to show that on 26 July 1969 defendant and his girlfriend, both of Portsmouth, Virginia, came to Knightdale, North Carolina, to visit defendant's uncle, George O'Neal Sorrell. George O'Neal Sorrell, his wife, defendant and his girlfriend, consumed some vodka and beer and then drove to Wendell, where they purchased several bottles of whiskey and steaks. They returned to the Sorrell home, and while Mrs. Sorrell cooked the steaks the others sat around a table drinking and playing a guitar. Just before the shooting, defendant requested Sorrell to play the guitar, and Sorrell said, "I don't feel like picking now." Whereupon defendant went into another room, obtained a pistol from his girlfriend's pocketbook, returned to the room and said: "You pick it or die." He immediately shot Sorrell, who died as a result of the wound.

Defendant offered testimony which tended to show that he remembered nothing of the actual shooting; that he was a heavy drinker but had never before been involved in any serious crime.

At the conclusion of all the evidence the trial judge entered judgment sentencing defendant to not less than 25 years nor more than 30 years in State's Prison.

On 26 October 1969 and on 13 April 1970, defendant directed letters to the Clerk of Superior Court of Wake County stating that he wished to appeal. Thereafter, Judge James H. Pou Bailey appointed Thomas D. Bunn attorney for defendant to seek a writ of *certiorari* to the Court of Appeals. The Court of Appeals allowed the petition for *certiorari* on 17 October 1970. The case is now before the Supreme Court pursuant to its general referral order effective 1 August 1970.

*Attorney General Morgan, Assistant Attorney General Costen, and Assistant Attorney General Melvin for the State.*

*Hatch, Little, Bunn, Jones & Liggett, by Thomas D. Bunn, for Defendant.*

BRANCH, Justice.

The sole question presented for decision is whether defendant was coerced into entering a plea of *nolo contendere* to second degree murder in order to avoid the possibility of capital punishment and thereby was deprived of his constitutional rights to trial by jury, to confront his accusers, and his constitutional privilege against compulsory self-incrimination.

Defendant contends that he has never admitted his guilt because he had no recollection concerning the actual homicide, and further, that his plea of *nolo contendere* does not expressly admit guilt. He relies heavily on the case of *Alford v. State of North Carolina*, 405 F. 2d 340. In that case the defendant was indicted for first degree murder and through his counsel tendered a plea of guilty of second degree murder to the State. The solicitor for the State agreed to accept the plea, and the trial court heard damaging evidence against the defendant before accepting the plea. The defendant professed his innocence throughout the proceedings, and contended that his plea was entered because of the threat of the death penalty which he would have faced had he pleaded not guilty. He was sentenced to thirty years in prison. After various petitions and proceedings, the Fourth Circuit Court of Appeals heard an appeal from a denial of petition for writ of *habeas corpus* by Judge Eugene A. Gordon, District Judge for the Middle District of North Carolina. The Court of Appeals, holding the plea to be involuntary because it was motivated by fear of the death penalty *inter alia*, stated:

"North Carolina law presently prescribes the death penalty for murder in the first degree, as well as certain other crimes. In each instance the penalty prescribed is death; in each instance also the jury may, in its discretion, obligatorily recommend that punishment be imprisonment for life. North Carolina does not permit an accused who pleads not guilty to waive a jury trial. The accused may avoid a jury trial only if he pleads guilty and, by statute, a plea of guilty may not result in a punishment more severe than life imprisonment. Thus, a person accused of a capital crime in North Carolina is faced with the awesome dilemma of risking the death penalty in order to assert his rights to a jury trial and not to plead guilty, or, alternatively, of pleading guilty to avoid the possibility of capital punishment. It was precisely this sort of inhibitory or chilling

effect upon the exercise of constitutional rights which the Supreme Court condemned in *Jackson* (390 U.S. 570, 20 L. Ed. 2d 138, 88 S.Ct. 1209) because a statutory scheme such as that employed by North Carolina 'needlessly encourages' guilty pleas and jury waivers.

. . . . .

"In the light of the principles we distill from *Jackson*, we have no hesitancy in concluding from our examination of the record that petitioner's plea of guilty was made involuntarily, and that petitioner is entitled to relief by habeas corpus."

The State of North Carolina appealed from the decision of the Fourth Circuit Court of Appeals, and the United States Supreme Court noted probable jurisdiction, heard argument on 17 November 1969, and reargument on 14 October 1970. On 23 November 1970 the Supreme Court handed down its opinion (39 L.W. 4001, 400 U.S. 25, 27 L. Ed. 2d 162) vacating the judgment of the Circuit Court of Appeals and remanding the cause for further proceedings consistent with its opinion. We quote excerpts from the Court's opinion:

"We held in *Brady v. United States*, 397 U.S. 742 (1970) that a plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty and to limit the maximum penalty to life imprisonment or a term of years was not for that reason compelled within the meaning of the Fifth Amendment. *Jackson* established no new test for determining the validity of guilty pleas. *The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.* (Citations omitted) That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be the defendant's advantage. The standard fashioned and applied by the Court of Appeals was therefore erroneous. . . . (Emphasis supplied)

. . . . .

"State and lower federal courts are divided upon whether a guilty plea can be accepted when it is accompanied by protestations of innocence and hence contains only a waiver of trial but no admission of guilt. Some courts, giving expression to the principle that '[o]ur law only authorizes a conviction where guilt is shown,' . . . . require that trial judges reject such pleas. But others have concluded that they should not 'force any defense on a defendant in a criminal case,' particularly when advancement of the defense might 'end in disaster . . . . '

. . . . .

"The issue in *Hudson v. United States*, 272 U.S. 451 (1926) was whether a federal court has power to impose a prison sentence after accepting a plea of *nolo contendere*, a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty. The Court held that a trial court does have such power, and except for the cases which were rejected in *Hudson*, the federal courts have uniformly followed this rule, even in cases involving moral turpitude. *Bruce v. United States (supra)* (379 F. 2d 113) at 120 n. 20 (dictum). See, *e.g.*, *Lott v. United States*, 367 U.S. 421 (fraudulent evasion of income tax); *Sullivan v. United States*, 348 U.S. 170 (1954) *(Ibid); Farnsworth v. Zerbst*, 98 F. 2d 541 (CA5 1938) (espionage); *Pharr v. United States*, 48 F. 2d 767 (CA6 1931) (misapplication of bank funds); *United States v. Bagliore*, 182 F. 2d 714 (EDNY 1960) (receiving stolen property). Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence.

" . . . An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

" . . . When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the

judge could test whether the plea was being intelligently entered, see *McCarthy v. United States (supra)* (394 U.S. 459), at 466-67 (1969), its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it."

Here, the record shows defendant to be a person of average intelligence who was faced with damaging and uncontradicted evidence sufficient to sustain a verdict of murder in the first degree. After consulting with his counsel and after being fully apprised of his rights and the effect of entering a plea of *nolo contendere* to second degree murder, defendant authorized his counsel, whose competency is unchallenged, to enter such plea in his behalf. Before allowing entry of the plea, the trial judge carefully examined defendant concerning the voluntariness of his plea and adjudged that the plea was freely, understandingly and voluntarily made.

Applying the principles set forth by the United States Supreme Court in *North Carolina v. Alford, supra,* we hold that defendant's plea of *nolo contendere* to second degree murder represented a "voluntary and intelligent choice among the alternative courses of action open to the defendant."

The judgment of the Superior Court is

Affirmed.

Justice MOORE did not participate in the consideration or decision of this case.